NATHANIEL H. BRACY, PLAINTIFF AND RESPONDENT, v. GREAT NORTHERN RAILWAY COMPANY, A CORPORATION, DEFENDANT AND APPELLANT.

No. 9826.

Submitted April 15, 1959. Decided August 19, 1959.

As Amended on Denial of Rehearing Sept. 23, 1959.

343 Pac. (2d) 848.

66

See **C. J. S.** Master and Servant, § 534.

Weir, Gough, Booth & Burke, Helena, H. D. Carmichael, Butte, for appellant.

Edwin S. Booth, Helena, argued orally for appellant.

Shone & Sullivan, Butte, for respondent.

A. G. Shone, Butte, argued orally for respondent.

MR. JUSTICE ANGSTMAN:

Defendant appeals from a judgment rendered on a verdict in the sum of $27,500 for personal injuries sustained by plaintiff while employed as a fireman, but working as an engineer, on a switch engine. The action is one under the Federal Employers' Liability Act. 45 U.S.C.A. Secs. 51-59.

Plaintiff's amended complaint alleges the accident occurred while the railroad crew was making up a train in the defendant's yards at Hillyard, Washington. It was alleged that the accident occurred at night, and while plaintiff was pushing cars westward with the engine; that the operation was controlled by lanterns in the hands of switchmen who gave signals designed to control the movement of the engine; that during the course of these operations there was a violent and sudden collision between the train which plaintiff was operating and cars that were stationary on the track; that the impact caused the injuries to plaintiff complained of; that the negligence was attributed to switchmen who failed to give the signal that there were cars on the track and who were alleged to have been negligent in other particulars; that there were three cabooses between the engine driven by plaintiff and the cars which he was pushing on the track, and these obstructed his view so that he had to rely solely on the signals given by the switchmen.

Defendant's first contention is that the court erred in denying its motion to dismiss the complaint upon the ground that the action was not brought in the proper or convenient forum in that all the witnesses reside in the State of Washington where the accident occurred. Defendant relies on the doctrine of *forum non conveniens*. The motion was made before trial, renewed at the beginning of trial, and again at the close of the case. The several motions were denied.

In its order denying the motion, the court expressed doubt as to whether the doctrine of *forum non conveniens* has any application in Montana, but stated in substance that even though it is proper to apply the doctrine in this state, the facts in the instant case do not warrant its application here.

Defendant asks us to settle the question as to whether the ▮▮ doctrine has application in this state. We see no purpose in resolving this academic question here. If it does apply, the court cannot be placed in error for not granting the several motions. Admittedly, whether the doctrine should be applied in a given case is a question resting in the discretion of the trial court. Cullinan v. New York Cent. R. Co., D.C.N.Y. 1948, 83 F. Supp. 870; Mooney v. Denver & R. G. W. R. Co., 118 Utah 307, 221 Pac. (2d) 628.

Affidavits of defendant show plaintiff to be a resident of ▮▮ Spokane, Washington, which is near the place of the accident at Hillyard, Washington; that it would be inconvenient and expensive for defendant to try the case in Butte, Montana; that the jury would be precluded from viewing the scene of the accident; that witnesses could not be compelled to attend the trial in Montana by process of court; and that both the state and federal courts at Spokane, Washington, were available with no undue delay.

Plaintiff's counter-affidavits were to the effect that all witnesses were employees of defendant and could be brought to Montana for the trial; that because the doctors treating plaintiff at Spokane would not inform plaintiff of his injuries it was necessary for plaintiff to engage a doctor at Butte and have X-rays taken; that such medical witnesses were necessary as key witnesses and could not be compelled to attend a trial in Spokane; that a jury view of the scene of the accident would not be proper since it happened at nighttime; and that plaintiff has photographs showing the yards of defendant where the accident occurred.

There is no basis for the contention that the trial court abused its discretion in denying the motion.

Defendant contends that the court erred in admitting testimony relative to mortality and annuity tables and in giving its Instruction numbered 28 having to do with the effect of these tables. It is conceded that Instruction 28 was proper if the mortality and annuity tables were properly in evidence, hence, the only point involved on this subject is this: Was the evidence such that the case called for use of mortality and annuity tables? The test to be applied as to whether the case is one justifying the use of evidence of mortality and annuity tables is this: Is there substantial evidence in the record which would support a finding by the jury that there is permanent disability? Cornell v. Great Northern R. Co., 57 Mont. 177, 187 Pac. 902; Ralph v. MacMarr Stores, 103 Mont. 421, 62 Pac. (2d) 1285, and compare Gilman v. G. W. Dart Hardware Co., 42 Mont. 96, 111 Pac. 550; and McNair v. Berger, 92 Mont. 441, 15 Pac. (2d) 834.

There was medical testimony as to plaintiff's physical condition and that plaintiff was partially and permanently injured. A part of the evidence bearing on that point is referred to later in this opinion. The fact that plaintiff has worked with reasonable regularity since the accident does not militate against the claim that he has been permanently, partially disabled.

Defendant contends that it was error to give Instruction 27 reading:

"You are instructed that plaintiff had a right to assume that his fellow employees would obey the rules of the company and perform their duty thereunder."

Defendant's contention is that the evidence does not show there was any such rule. The record shows the following:

The switch foreman employed by defendant, working with the crew with which plaintiff worked, testified:

"Q. And when passing through the Yard at the railway company, is it not the duty of the Conductor and all of the Brakemen to station themselves where they can observe and transmit signals? A. Yes, sir.

70

"Q. That's a rule of your company, is it not? A. Yes, sir. * * *

"Q. And if the rule says that they are there with the Conductor for the purpose of observing and transmitting signals, do you comply with that rule? A. Yes, sir."

Again he testified:

"Q. Now, isn't it a rule of your Company, that before moving cars or engine in the Yard or on the Yard tracks it must be known that they can be moved with safety? A. Yes.

"Q. And it is the Conductor's duty to know that they can be moved with safety? A. Yes.

"Q. So, on this night it was your duty to know that this train could be moved with safety? A. Yes.

"Q. And that was according to the rules? A. Yes.

"Q. Is that right? A. Yes. * * *

"Q. Now, I will ask you if it isn't a rule of your Company that when pushing a train of cars the disappearance from view of the trainman's light by which signals are given must be regarded as a stop signal? A. That's correct.

"Q. Isn't that correct? A. Yes.

"Q. Do you always obey that rule? A. Yes, sir."

This evidence was sufficient for the jury to predicate a finding that the Company did have rules governing its operations and justified the giving of Instruction No. 27.

Defendant contends that the court erred in giving 
[6] tion No. 12 over objection that it omits the question of contributory negligence, and is an incomplete statement of the law. The Instruction given was in the following language:

"This case is based on a statute of the United States generally known as the Federal Employers' Liability Act which provides that a common carrier by railroad such as the defendant here, shall be liable to damages to any employee suffering injury while he is employed by such carrier by railroad for such injury resulting in whole or in part from the negligence, if any, of the officers, agents or employees of such carrier."

There were other instructions covering contributory negli-

gence. Thus, Instruction No. 14 offered by the defendant and given by the court reads:

"The federal law which concerns us in this trial provides that a common carrier by railroad, such as the defendant here, shall be liable in damages to any employee who suffers injury when he is engaged in the duties of his employment, which injury results in whole or in part from the negligence of any of the officers or agents or of any employee of such carrier, except solely from the negligence of the one so injured. If all the factors mentioned as creating such liability existed, the fact, if it is a fact, that the employee, himself, was guilty of contributory negligence shall not be a total bar to recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. The application of this rule shortly will be explained."

Other instructions also further explained the issues of negligence and contributory negligence. The court did not err in giving its Instruction No. 12.

Defendant contends that the court erred in giving its Instruction No. 29 over objection. This instruction enumerated items of damages which the jury should consider such as physical and mental pain and suffering, and then contained this clause: "* * * loss of wages and future earnings, and the impairment of earning capacity, if any, his loss of power and capacity to work, if any, and its effect upon his future and his personal inconvenience and disfigurement, if any, insofar as caused by the injuries proven."

It is the quoted clause that defendant objected to. It contends that the evidence does not show any loss of earnings or impairment of earning capacity. It contends that the evidence does not show when, if ever, plaintiff will lose any income by reason of the accident and permits the jury to speculate. There was evidence of a partial, permanent disability. Some evidence fixed the disability at twenty percent.

Dr. Shields who took X-ray pictures of plaintiff testified therefrom as follows:

"A. There is a bone that goes right under the eye that makes what we call the orbital socket; and, on the right side, that bone is broken in two places—right here, where my finger is (indicating), you can see a notch (indicating).

"Now over here (indicating) on the other side, you can see another notch (indicating), and the piece in the middle—the central piece of this bone (indicating), below your eye, is pushed downward and inward (indicating) and into your 'antrum' (indicating), or 'sinus' as you call it, in the jaw bone. It is a cavity in the bone—(indicating)—and that piece (indicating) is pushed downward into it. * * *

"Q. Now, what effect does that have on the patient with that bone deflected in the sinus, Doctor; what probable effect would it have? A. Well, from the history I got when I took it—I don't know offhand what date it was (witness examines file of papers)—January 10th, 1956, he was examined.

"Now, of course, at that time, around this bone (indicating) was callus. It is solid now.

"But taking his history, he had bleeding from the nose; and also shortly after he was injured, the side of the face would balloon up to about the size of a hickory nut and then it would go down again—in other words, it shows definitely that the antrum was broken into, and the bleeding went through his nose and the air came out through the sinus (indicating).

"Q. And as he inhaled the air would go up through the sinus and through the break and cause the— A. (Interrupting) Into the soft parts.

"Q. —and cause the eye to balloon up? A. Yes. And then after a few days he said that the bleeding stopped, and when the bleeding stopped, it was only a short time before there was no more ballooning up of the face.

"Q. Now, what caused that? A. Well, this (indicating) was sealed off by the clotting and the beginning of the organization of the blood that was in the fracture.

"Q. In other words, Doctor, the blood would clot up in the

sinuses and block up the air passage that was broken through? A. Yes."

True, the evidence does not show clearly when that disability ▮ will be reflected in the way of decreased earnings. The fact that the instruction dealt with future effects is no valid objection. Chesapeake & Ohio R. Co. v. Carnahan, 241 U. S. 241, 36 S. Ct. 594, 60 L. Ed. 979; and see Kirchgestner v. Denver & Rio Grande W. R. Co., 118 Utah 20, 218 Pac. (2d) 685. There was some evidence on which the jury could arrive at a proper verdict in that respect. As will be noted the instruction, when itemizing the elements of damages, constantly qualified each item with the statement, "if any."

The case of Honeycutt v. Wabash R. Co., Mo. App. 1958, 313 S. W. (2d) 214, 216, is relied on by defendant as sustaining the contention that it was improper to instruct the jury as to future impairment of earning capacity. In that case plaintiff relied on proof alone of a permanent injury to warrant a claim for loss of future earnings. The court said: "Plaintiff * * * contends that the submission of future impairment of earning capacity was warranted for the reason that plaintiff's evidence conclusively showed that he had sustained a permanent injury and that this alone warranted the submission of the issue." The court condemned the instruction covering the item of future impairment of earning capacity, saying: "There is no evidence of disability to work in the future, or of plaintiff's expectancy of life * * * or of plaintiff's actual earnings before the injury."

Here there was medical evidence of a twenty percent loss of ▮ ability to work. Plaintiff's life expectancy was shown and his actual earnings before the injury were shown. In this case the necessary evidence was before the jury on which it could make calculations as to damages. The evidence of the percentage of disability related to the time of the examination by the doctor and not to some future time. We call attention to the fact that it is impossible to tell from the verdict whether any allowance was actually made for loss of future earnings. It was not prejudicial error to submit the instruction complained of.

Defendant next contends that the court erred in refusing to ■■■■■ give its proposed Instruction No. 29. That offered instruction was as follows:

"You are instructed that any award made to plaintiff as damages in this case is not subject to federal or state income taxes, and you should not consider such taxes in fixing the amount of any award made to plaintiff. Further, the law does not permit you to include any sum for payment of court costs or attorney's fees, as such matters are not submitted to you for determination."

Defendant contends that unless so instructed the jury might well consider that whatever amount they thought would compensate plaintiff would have to be increased by twenty to twenty-five percent, together with attorney's fees and costs, in order to grant the net amount they desired that plaintiff should take home as compensation for his injuries.

On this subject, the court in Combs v. Chicago, St. Paul, Minneapolis & Omaha Ry., D. C. Iowa 1955, 135 F. Supp. 750, 751, stated the only common-sense view. In that case the court said: "The Courts seem well agreed that the future tax liability is subject to too many variables to be a matter of consideration in an award for future impairment of earning capacity."

The tax liability of today is no criterion of what it may be tomorrow. It has a faculty of constantly increasing in the face of vocal threats of reduction made usually on the eve of an election. And see generally Southern Pacific Co. v. Guthrie, 9 Cir., 1951, 186 F. (2d) 926; Hall v. Chicago & N. W. Ry. Co., 349 Ill. App. 175, 110 N. E. (2d) 654, note in 9 A.L.R. (2d) 320, and Leming v. Oilfields Trucking Co., 44 Cal. (2d) 343, 282 Pac. (2d) 23, 51 A.L.R. (2d) 107; O'Donnell v. Great Northern Ry. Co., D. C. Cal. 1951, 109 F. Supp. 590; Atlantic Coast Line R. Co. v. Brown, 93 Ga. App. 805, 92 S. E. (2d) 874; and Wagner v. Illinois Cent. R. Co., 7 Ill. App. (2d) 445, 129 N. E. (2d) 771.

There is some authority supporting the view that such an in-

struction is proper. See Dempsey v. Thompson, 363 Mo. 339, 251 S. W. (2d) 42.

In Highshew v. Kushto, 126 Ind. App. 584, 131 N. E. (2d) 652, 133 N. E. (2d) 76, it was held that the failure to give such an instruction was harmless.

That the courts are divided on the question is pointed out in the note in 63 A.L.R. (2d) commencing on page 1393. On page 1408 of that annotation the author says: "The more general opinion appears to be that the incidence of income tax as it relates to such damages should not be mentioned at all in the instructions to the jury, nor in argument of counsel."

Many cases are cited on page 1408, both in personal injury and death actions holding that it is improper to instruct the jury that an award will not be subject to income taxes.

We think that when the jury is instructed as here, on the elements, it could consider, in arriving at its verdict, an instruction of a negative sort as to what it may not consider is properly refused. What we have said on the subject of taxes applies with equal force to the subject of costs and attorney's fees. There was no error in refusing to give this offered instruction.

The next contention is that the jury returned a quotient verdict. Affidavits of the jurors were filed in connection with the motion for a new trial which defendant relies on in support of its contention. The substance of these affidavits is that each juror wrote down the amount of money that he or she thought plaintiff should recover. The sums were thereafter added together and the result divided by twelve, which result was then decided upon as the verdict; that it was understood and agreed before the sums were submitted and the result obtained by dividing the sum by twelve that the sum thus obtained would be the verdict; that each juror was induced to assent to the verdict because of this understanding.

However, counter-affidavits of the jurors state the original affidavit was not in accord with the facts. The counter-affidavits show that no prior agreement was made to the effect that the result of the addition and division method used would be-

76

come their final verdict. Under the showing by the counter-affidavits there is no valid objection to the method by which the verdict was obtained. See Gordon v. Trevarthan, 1893, 13 Mont. 387, 390, 34 Pac. 185, 40 Am. St. Rep. 452; Sutton v. Lowry, 1909, 39 Mont. 462, 473, 104 Pac. 545; Great Northern R. Co. v. Benjamin, 1915, 51 Mont. 167, 172, 149 Pac. 968.

A quotient verdict is not objectionable where there is no previous agreement to be bound by the result of the quotient process. 39 Am. Jur., New Trial, sec. 124, p. 134.

Defendant assigns error in the refusal of the court to grant its motion for a directed verdict. Defendant asserts that the evidence was insufficient to make out a case for the jury and particularly as it affected the extent of the injuries and damages. We have carefully considered all the evidence in the case, some of which is alluded to above, and find there was ample evidence of injuries to make out a case for the jury. Likewise defendant's contention that the evidence of negligence was insufficient to make out a case for the jury cannot be sustained. At most the evidence on the point was conflicting and this makes the question one for the jury.

Plaintiff testified he saw Rowley's lantern at all times and no signal was given until almost simultaneously Rowley and Thompson, who had gotten from the head car to the ground, gave "wash-out" signals.

Defendant contends that plaintiff's testimony is directly opposed to the testimony of the three switchmen who testified to the giving of easy or slow and stop signals by Rowley in ample time to make the coupling of the cars in the usual manner.

This court has consistently adhered to the rule that questions of credibility are for the jury alone, and, where the evidence is conflicting, it is for the jury to resolve the conflicts.

From what has already been said there is no merit in defendant's further contention that the court erred in refusing to grant a new trial for insufficiency of the evidence to justify the verdict, that the verdict is against law, and that the verdict is excessive.

It is obvious that the accident did in fact occur, and the evidence shows that plaintiff had been laid off for fifteen days by reason of the accident. There was evidence of a partial, permanent disability of twenty to twenty-five percent. There was evidence of pain and suffering. Plaintiff sought $85,000 and received only $27,500. There is no basis for the contention that the verdict is the result of passion and prejudice.

The judgment is affirmed.

MR. JUSTICES ADAIR and BOTTOMLY concur.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE CASTLES:

We dissent.