## HATSUE KAWAMOTO *v.* JACK T. YASUTAKE.

### No. 4428.

FEBRUARY 1, 1966.

CASSIDY, ACTING C.J., WIRTZ, LEWIS AND MIZUHA, JJ.,
AND CIRCUIT JUDGE FAIRBANKS ASSIGNED BY
REASON OF VACANCY.

OPINION OF THE COURT BY MIZUHA, J.

Plaintiff, Hatsue Kawamoto, sued for personal injuries suffered on September 24, 1958 as a passenger in an automobile which was struck from the rear by an automobile driven by defendant Jack T. Yasutake. Liability was admitted by the defendant. A jury verdict was returned

in plaintiff's favor, awarding $350.00 for special damages and $10,550 as general damages, on January 9, 1964. By its judgment, the trial court reduced the special damages to $256.77, an amount previously stipulated by the parties. Defendant appeals from the judgment.

First, defendant argues that it was "prejudicial error for the lower court to permit Plaintiff on voir dire to question the jury panel relative to Grain Dealers Mutual Insurance Company (defendant's liability insurer), where they [the jury] had previously denied any interest in *any* liability insurance company."

The questions propounded by plaintiff's counsel were:

"Q. * * * Are any of you or your respective spouses or any of your relatives stockholders, officers, directors or employees of any indemnity insurance company or liability insurance company?

"A. JUROR: The thing is, I work for an insurance company, but it isn't a company that you mentioned.

"Q. MR. SYMONDS: But you work for an insurance company?

"SAME JUROR: Yes.

"Q. (By MR. SYMONDS) Now, another question directed to all of you in connection with that general question: Are any of you, any of you sitting in the box or any sitting in the courtroom, are any of your relatives or any members of your families employed by or stockholders of Grain Dealers Mutual Insurance Company?

"MR. GOULD: (Defendant's Counsel) Your Honor, may we approach the bench?

"THE COURT: Yes.

(Discussion at the bench between Court and counsel. No reporter present.)"

No objection by defendant or ruling by the court appears in the transcript. Defendant argues that notwith-

standing these omissions from the record, he did make an objection which was overruled by the court. No other questions on insurance during the voir dire examination appear in the record.

It is unnecessary for this court to consider the merits of defendant's argument that the second question put to the jurors regarding ownership of stock in the Grain Dealers Mutual Insurance Company was not asked in good faith because its sole purpose was to "advise the jury that there was, in fact, insurance." This court will not consider a question which was not raised and "properly preserved in the lower court." *Estate of Campbell,* 46 Haw. 475, 485, 382 P.2d 920, 934; *In re Guardianship of Matsuoka,* 45 Haw. 83, 88, 363 P.2d 964, 967; *Lindeman* v. *Raynor,* 43 Haw. 299, 301; *Clark* v. *Worrall,* —— Mont. ——, ——, 406 P.2d 822, 825. As stated in *In re Goodfader,* 45 Haw. 317, 343, 367 P.2d 472, 487, "It is clearly the obligation of counsel in any case to see to it that his objections to or grounds for action are made a part of the record."

Second, defendant argues that the trial court erred in giving an instruction on life expectancy when the "evidence did not properly establish the permanent nature of the alleged injuries of Plaintiff." We find no error since the evidence as to the permanency of plaintiff's injuries is clear. *Franco* v. *Fujimoto,* 47 Haw. 408, 435, 390 P.2d 740, 755. Plaintiff still suffered from pain in the neck and left shoulder area and numbness in two fingers at the time of trial. She was also unable to lift anything with her left hand. After stating that plaintiff's symptoms were a direct result of the trauma from the accident, plaintiff's orthopedic surgeon established that there was a "limitation of actual bending of the neck to the right by tightness of the muscles on the left side" and "sensation of numbness through her fingers." He considered plain-

tiff's condition "a permanent one on the basis of five years without complete recovery."

Third, the defendant specifies as error the refusal of the trial court to allow his medical expert[1] to give an opinion which he testified he had formed, as shown by the following:

"Q. (By MR. GOULD) Doctor, based upon the information that you have, without recapitulating it all, based on the entire amount of information you have been able to get from the history, the records, the X-rays and everything else, would you be able to form an opinion to a reasonable degree of medical certainty as to whether the symptoms of neck pain, shoulder pain, arm pain, back pain, etcetera, would continue from the period of 1951 from the time she left Leahi until the trauma of September 24, 1958?

\*    \*    \*    \*    \*    \*    \*    \*    \*

"A. Yes.

"Q. Well now, doctor to a reasonable degree of medical certainty, what is that opinion?"

Objection to this question was sustained.

Defendant argues that the ruling "prevented the jury from hearing vital medical testimony, indicating that the Plaintiff would or should have had symptoms during the period from 1951 to the trauma of September 24, 1958. This constituted the very heart of the case, as the Plaintiff's case rested almost entirely upon the proposition that the Plaintiff was asymptomatic prior to the trauma."

The question as stated was objectionable. Such a question must be based upon material facts in evidence sufficient to form a basis for an expert opinion. *Baumhoer v. McLaughlin*, 205 S.W.2d 274 (Mo. 1954); *Stanley Co.*

---

[1] The medical expert saw plaintiff once on August 8, 1963, five months before trial for about 15 to 20 minutes at the request and expense of defendant. The medical records referred to were records of Leahi Hospital where plaintiff was a tuberculosis patient in 1950-51, seven years prior to the accident.

*of America* v. *Hercules Powder Co.,* 16 N.J. 295, 108 A.2d 616; *Helman* v. *Sacred Heart Hospital,* 62 Wash. 2d 136, 381 P.2d 605; 66 A.L.R.2d 1086; see 20 Am. Jur., *Evidence,* § 787, p. 661; 32 C.J.S., *Evidence,* § 546(94), p. 348 and see §§ 549-560, pp. 507-573; 2 Wigmore, *Evidence,* §§ 659, 663, pp. 658, 662 and §§ 672-686, pp. 792-813 (3d ed. 1940).

In evidence were the medical records of plaintiff as a patient in Leahi Hospital. It noted complaints of pains while she was a bed patient in both her shoulders and back but said nothing of neck pains. There is no comment as to the cause of these pains. The medical expert on voir dire admitted that there is nothing in the medical records to show that plaintiff suffered any neck pains during her convalescence at Leahi Hospital.

When it was pointed out that there was nothing in the medical records to indicate what kind of back pain was involved or where it was located, the medical expert nevertheless felt that he could with reasonable medical certainty locate the area of pain from the x-rays, testifying: "There are 25 mobile vertebrae where there can be back pain. Twenty-two of these mobile vertebrae are often involved in pain with the neck, which gives me a batting average of 88%, which I think is about the best percentage in this whole case, that the back pain was in an area that is usually governed by the neck, so I have an 88% probability of being right." In response to a question whether the back pain was the result of increased activity after a long period of immobility, the medical expert answered "anything is possible."[2]

---

[2] "Q Now doctor, a person who has been bedridden from June of 1950 to January of 1951 and been only given bathroom privileges until in April and then has increased activity, with all that period of immobility and then the increased activity, wouldn't that bring about some pain in the back?
"A Anything is possible, Mr. Symonds.
"THE COURT: I think that really doesn't answer the question though that anything is possible.
"THE WITNESS: I'm sorry, I cannot answer the question then, sir."

There was no reference in the hospital records to pain in the left shoulder after September 19, 1950, up to the date plaintiff was discharged, November 6, 1951, a period of more than a year. When asked about this defendant's medical expert testified, in reference to such pains: "They are highly variable. They go up and down, up and down, up and down."

We do not have to reach the question whether there is sufficient evidentiary basis that the pain plaintiff suffered in her shoulders, arm and back while a tuberculosis patient at the hospital were related to the evidence of deterioration of her vertebrae at the C-5 and C-6 level as shown by the x-rays in 1961 which the medical expert had previously stated were the source of all of her present complaints. It is clear that there is insufficient evidentiary basis for an opinion that plaintiff "would continue" to suffer neck, shoulder, arm and back pains from the time she left Leahi in 1951 until the date of the accident in 1958.

Furthermore, we cannot see how the ruling was prejudicial to the defendant when the medical expert testified earlier in his direct examination without objection as follows:

"Q Thank you, doctor. Now doctor, based upon the examination which you have previously described, as well as your examination of all of the various X-rays in this matter, in addition to the examination of these parts that you have just quoted, as well as your further examination of this hospital record of Leahi Hospital, are you able to reach any conclusion as to the relation of the complaints of the plaintiff to the trauma of September 24, 1958?

"A I can.

"Q Could you state that please, doctor?

"A From these records and the X-rays and from

Mrs. Kawamoto's examination in my office, it is obvious that she has had neck trouble since prior to 1950. This neck trouble has been worse on the left than on the right, as shown by the X-rays, and it has progressed as shown by the X-rays. There is no sudden change in the X-ray changes until long after the automobile accident. I feel that her present complaints are related wholly to an arthritic neck, and the relationship of the injury to her complaints of neck arthritis are real but to a small degree, and that degree I cannot give you, except to say it is minor because of the distance of the trauma from her present complaints. In other words, she has a stiff neck or neck problems which were investigated as early as 1950 of the same nature of left shoulder-arm pain, and some difficulties which had been increasing, and I am in doubt as to the relationship of her automobile accident to her present complaints."

Fourth, defendant contends that "it was prejudicial error for the lower court to give an instruction relative to aggravation of the pre-existing condition of the Plaintiff in the absence of competent medical testimony in support thereof." This contention is without merit. Plaintiff's doctor testified:

"Q (By MR. SYMONDS) Now doctor, in your earlier testimony and just about the time that we took our recess you stated that these conditions that you have been discussing before the jury were in your opinion with reasonable medical certainty the result of this accident of 1958. Now doctor, this neck condition, left shoulder condition, left arm condition, left hand condition, in your opinion, with reasonable medical certainty, are they the result of trauma applied to a pre-existing condition such as these degenerative changes or is it your opinion that it was a new injury

**50**

that was to a part of the body of Mrs. Kawamoto?

"A  I don't think there is any way of answering that with certainty. The symptoms that developed, I think, were a direct result of the trauma, whether it was an aggravation of the degenerative changes that we have indicated were going on at this level, or whether it was a new injury to a level a little bit lower, I don't see that there is any way of telling.

"Q  Whether an aggravation or a new injury, you relate the pain symptoms to the accident?

"A  That is correct."

Defendant's two medical witnesses stated that there was a relationship between the injury and her present complaints but to a small degree.

We find nothing prejudicial in the instruction which advised the jurors that the defendant, if negligent, was legally responsible for all of the injuries to the plaintiff, whether the injuries were new ones or whether they were due to an aggravation of a pre-existing condition.

" * * * [W]here a pre-existing diseased condition exists, and where after trauma aggravating the condition disability and pain result, *and no apportionment of the disability between that caused by the pre-existing condition and that caused by the trauma can be made,* in such case, *even though a portion of the present and future disability is directly attributable to the pre-existing condition,* the defendant, whose act of negligence was the cause of the trauma, is responsible for the entire damage." *Newbury* v. *Vogel,* 151 Colo. 520, 524, 379 P.2d 811, 813. (Emphasis added). See also *Intermill* v. *Heumesser,* —— Colo. ——, 391 P.2d 684; *Wise* v. *Carter,* 119 So. 2d 40 (Fla. 1960).

Fifth, defendant argues that the lower court com-

mitted error by "numerous and repetitious instructions relative to damages which over-emphasized the amount of damages to be awarded." We have carefully reviewed all the instructions and find no prejudicial error.

Defendant also argues as error the trial court's failure to give Defendant's Instruction No. 6, which reads:

> "You are instructed that under the law an award made to the plaintiff is not subject to federal or state income tax and you should not consider such taxes in fixing the award made to plaintiff."

We are in agreement with those jurisdictions which hold that the incidence of taxation is not a proper fact for a jury's consideration since "it introduces a wholly collateral matter into the damage issue." *Missouri-Kansas-Texas R.R.* v. *McFerrin,* 156 Tex. 69, 90, 291 S.W.2d 931, 945. *Altemus* v. *Pennsylvania R.R.,* 32 F.R.D. 7; *Hardware Mutual Cas. Co.* v. *Harry Crow & Sons, Inc.,* 6 Wis. 2d 396, 94 N.W.2d 577; *Bracey* v. *Great Northern Ry.,* 136 Mont. 65, 343 P.2d 848, *cert. denied,* 361 U.S. 949 (1960); *Missouri-Kansas-Texas R.R.* v. *McFerrin, supra.* See *Hall* v. *Chicago & North Western Ry.,* 5 Ill. 2d 135, 125 N.E.2d 77. *Contra, Dempsey* v. *Thompson,* 363 Mo. 339, 251 S.W. 2d 42.

Sixth, defendant contends that "the lower court should have granted the Defendant's Motion for new trial on the grounds of excessive damages."

It is not the function of the trial court, nor of this court, to substitute its judgment for that of the jury on the amount of damages unless the award is "not supported by the evidence, or so excessive and outrageous when considered with the circumstances of the case as to demonstrate that the jury in assessing damages acted against rules of law or suffered their passions or prejudices to mislead them." *Vasconcellos* v. *Juarez,* 37 Haw. 364, 366.

We find in the record no abuse of discretion by the trial court in failing to order a new trial on the grounds of excessiveness of the verdict. *Johnson* v. *Sartain,* 46 Haw. 112, 375 P.2d 229 (Opinion of Mizuha, J.); *Pooler* v. *Stewarts' Pharmacies, Ltd.,* 42 Haw. 618, 622; *Tsuruoka* v. *Lukens,* 32 Haw. 263, 268-69.

Defendant further argues that although "Plaintiff's special damages were stipulated by the parties to be $256.77 the jury's verdict for the Plaintiff was the sum of $350.00 for special damages, and that "the verdict is defective and must be set aside in its entirety" for it indicates "that the jury was guided by passion, prejudice and unaccountable caprice." Defendant's argument is frivolous in view of the circumstances which caused the jury to return the $350.00 verdict on special damages, which apparently included the price of the traction apparatus. After retiring, the jury asked the court the following:

"Is the jury to enter a figure on the verdict form for special damages and if so, may this figure be different from the $256 stipulated by the counsel? Is the price of collar and traction apparatus included?"

By stipulating that all three questions should be answered "yes" by the court, defendant invited the larger verdict. *State* v. *Shon,* 47 Haw. 158, 178, 385 P.2d 830, 841; *Kealoha* v. *Tanaka,* 45 Haw. 457, 461-62, 370 P.2d 468, 471. The error as noted was remedied by the court which reduced the verdict on special damages to the stipulated amount.

Judgment affirmed.

*Albert Gould* (*Levinson, Cobb & Gould* with him on the briefs) for defendant-appellant.

*Eichi Oki* and *Myer C. Symonds* (*Bouslog & Symonds* with him on the brief) for plaintiff-appellee.