NO.   94-100

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA, EX REL.,
BURLINGTON NORTHERN RAILROAD
COMPANY, a corporation,
        Relator,

        -v-

THE DISTRICT COURT OF THE EIGHTH
JUDICIAL DISTRICT COURT, CASCADE COUNTY,
and HONORABLE JOHN M. MCCARVEL
        Respondents.

FILED

MAR   2 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

ORIGINAL   PROCEEDING

COUNSEL OF RECORD:

        For  Relator:
            Kurt  W.  Kroschel  (argued),  Dennis  Nettiksimmons,
            Kroschel  &  Yerger,  Billings,  Montana

        For  Plaintiff:
            C.  Marshall  Friedman,  St.  Louis,  Missouri,  Lynn  D.
            Baker,  Newton  McCoy  (argued),  Hartelius,  Ferguson  &
            Baker,  Great  Falls,  Montana  (Iddings)

        For  Third-Party  Defendants:
            Don  M.  Hayes,  Herndon,  Hartman,  Sweeney  &  Halverson,
            Billings,  Montana  (DuPont  de  Nemours  &  Co.);  L.D.
            Nybo,  Nybo,  Conklin  &  LeVeque,  Great  Falls,  Montana
            (SSI/Mobley  Co.)

        For  Amici:
            Randy  Cox,  Boone,  Karlberg  &  Haddon,  Missoula,
            Montana,  Sue  Ann  Love,  Great  Falls,  Montana  (Montana
            Defense  Trial  Lawyers);  Patricia  O'Brien  Cotter,
            Cotter  &  Cotter,  Great  Falls,  Montana,  Lawrence
            Anderson,  Great  Falls,  Montana  (Montana  Trial
            Lawyers  Association);  Robert  M.  Knight,  Helena  S.
            Maclay,  Knight,  Maclay  &  Masar,  Missoula,  Montana

                            Heard:   October  25,  1994

                            Submitted:  October  25,  1994

                            Decided:  March  2,  1995

Filed:

_____
                Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This case comes before us on Relator Burlington Northern's (BN) application for a writ of supervisory control. BN requests that we order the District Court to dismiss, without prejudice, Plaintiff Anthony Iddings' (Plaintiff) Federal Employer's Liability Act (FELA or the Act) complaint seeking monetary damages for an injury occurring in the course and scope of his employment with BN. BN contends that dismissal is appropriate under the doctrine of forum non conveniens. We hold that dismissal on those grounds is not warranted and, accordingly, decline to issue the requested writ.

ISSUES

Four general issues are raised by the parties and are discussed by the parties and by amici. We restate these issues as follows:

I. Did the District Court err in failing to dismiss this case on the grounds of forum non conveniens because of the substantial increase in imported FELA cases in Montana?

II. Has the Montana Supreme Court applied the doctrine of forum non conveniens in non-FELA cases, and if so, must the doctrine now be applied in FELA cases?

III. Is it appropriate to apply the doctrine of forum non conveniens to the instant case?

IV. What is the effect of the Privileges and Immunities Clause on this litigation?

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's claim arose out of an incident in May of 1989, in Wyoming when he was allegedly injured in the course and scope of his employment with BN by being exposed to herbicides from spraying

2

operations at the rail yard. Plaintiff is neither a citizen nor a resident of Montana.

Plaintiff filed his FELA complaint under 45 U.S.C. § 51, et. seq., in the Eighth Judicial District Court, Cascade County, Montana, on April 27, 1992. On May 26, 1992, BN filed a motion to, alternatively, dismiss the complaint on the basis of the doctrine of forum non conveniens, or to change the place of trial.

By stipulation, BN's motion was stayed until the U.S. Supreme Court decided Burlington Northern v. Ford (1992), ___ U.S. ___, 112 S.Ct. 2184, 119 L.Ed.2d 432, which related to the railroad's motion for a change of place of trial based on equal protection grounds. The parties, nevertheless, agreed that discovery in the instant case would proceed. In May 1993, BN brought a third party complaint against E.I. DuPont de Nemours & Company, Inc. (DuPont) and SSI/Mobley Company, Inc. (SSI), contending negligence in the spraying operation which allegedly injured Plaintiff. In the course of their defense, DuPont and SSI joined BN's motion to dismiss Plaintiff's complaint for forum non conveniens and, subsequently, also filed their own motion to dismiss BN's third party complaint and amended third party complaint on the same grounds. BN's motion to dismiss Plaintiff's complaint for forum non conveniens was heard on January 26, 1994, and on February 15, 1994, the District Court entered its written order denying the motion. On March 7, 1994, BN filed a notice of application for writ of supervisory control. We accepted original jurisdiction, ordered briefs and, on October 25, 1994, heard oral argument. The

3

Montana Trial Lawyers Association, Montana Defense Trial Lawyers and Robert M. Knight and Helena S. Maclay filed briefs, amicus curiae.

DISCUSSION

I

Did the District Court err in failing to dismiss this case on the grounds of forum non conveniens because of the substantial increase in imported FELA cases in Montana?

BN contends that the District Court erred by not exercising its discretion to grant its motion to dismiss, because of what it claims is evidence of a substantial increase in the filing of out-of-state FELA cases in Montana, especially in Cascade County. As authority, BN cites, among others, our decision in Haug v. Burlington Northern R. Co. (1989), 236 Mont. 368, 770 P.2d 517, for the proposition that:

> [t]he common law doctrine of forum non conveniens allows a court to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Under the doctrine, a court may decline to exercise its jurisdiction when it believes that the action may be more appropriately and justly tried elsewhere.

Haug, 770 P.2d at 521, citing Gulf Oil Corp v. Gilbert (1947), 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed 1055, 1062. Moreover, BN argues that, "a court is free to decide the availability of the principle of forum non conveniens in FELA suits according to its own local law," providing that the local law is not applied in a discriminatory fashion, citing Missouri v. Mayfield (1950), 340 U.S. 1, 5, 71 S.Ct. 1, 8, 95 L.Ed. 3.

Plaintiff, on the other hand, maintains that filings of non-

resident FELA cases in the State of Montana since 1988, have neither overburdened the court system in this state nor "clogged" the dockets of Cascade County so as to call for the **implementation** of <u>forum non conveniens.</u> Additionally, Plaintiff maintains that BN's statistics are deceptive, and that many of the cases listed as filed since 1988, are cases wherein the "plaintiffs are actually <u>residents</u> of the State of Montana, . . or have substantial contacts with the State of Montana, in that they were treated by physicians located within the state."

The issue of trial courts' refusal to apply the doctrine of <u>forum non conveniens</u> in FELA cases filed in Montana has been considered by this Court on a fairly regular basis over the last three and one-half decades--largely because our prior cases have indicated a willingness to reexamine this issue if there was a substantial increase in such filings. Because there was no evidentiary hearing before or findings by the District Court on BN's data, we take no position on the validity or interpretation of the numbers and statistics offered by the Railroad. Notwithstanding, we conclude that the numbers, whether accurate or inaccurate, are not dispositive of this Issue and that the time has come to clarify, once and for all, the law to be applied henceforth in Montana with regard to the application of the doctrine of <u>forum non conveniens</u> in FELA cases filed in this State.

To put our decision in context, a review of our prior case law is necessary. We first substantively considered this issue in Bracy v. Great Northern Railway Company (1959), 136 Mont. 65, 343

5

P.2d 848. There, the plaintiff, injured in Washington, filed his FELA case in district court in Silver Bow County, Montana. Defendant's appeal included a claim that the district court erred in failing to dismiss plaintiff's complaint on _forum non conveniens_ grounds because the accident occurred in Washington and all the witnesses resided there. Defendant requested that we "settle the question as to whether the doctrine has application in this state." _Bracy_, 343 P.2d at 850. Expressing doubt as to whether the doctrine had any application in Montana, we declined to resolve this "academic question," and simply observed that whether the doctrine applies in a given case rests in the discretion of the trial court and that on the basis of the affidavits and counter-affidavits filed, the trial court did not abuse its discretion in denying defendant's motion to dismiss on _forum non conveniens_ grounds. _Bracy_, 343 P.2d at 850.

A few years later, this issue again surfaced in State ex rel. Great Northern Railway v. District Court (1961), 139 Mont. 453, 365 P.2d 512. That case, factually akin to _Bracy_, was also filed in Silver Bow County and came before this Court as an original proceeding from the trial court's denial of the railroad's motion to dismiss the injured employee's FELA action on _forum non conveniens_ grounds. _Great Northern_, 365 P.2d at 512. As additional support for its position, the Railroad argued that the district court's failure to dismiss non-resident FELA cases "has resulted in an increasing number of cases being filed in Silver Bow County, constituting a hardship upon both the Railroad Company and

6

the [county] taxpayers . "  Great Northern, 365 P.2d at 513.
Without analyzing plaintiff's contentions which, among others, included FELA choice of venue and state public policy/"open court" arguments, we acknowledged our ability to accept or reject the forum non conveniens doctrine and noted its purpose in requiring litigants to avail themselves of the trial forum in their residence.  Great Northern, 365 P.2d at 513.  Having those considerations in mind, but declining to "establish the rule," we concluded that the numbers of cases filed in Silver Bow County did not indicate a trend of importing non-resident FELA litigation. However, the numbers argument having been raised, we warned that we would reexamine this issue if there were substantial increases in filings of those type of cases.  Great Northern, 365 P.2d at 514.

LaBella v. Burlington Northern, Inc. (1979), 182 Mont. 202, 595 P.2d 1184, followed eighteen years later.  That case involved an appeal from a Lewis and Clark County district court order dismissing on forum non conveniens grounds, the FELA complaint of a non-resident worker injured in the state of Washington.  While the district judge concluded that, under Bracy and Great Northern, it was within his discretion to dismiss plaintiff's complaint because of forum non conveniens, we framed and resolved the issue on appeal much more narrowly.  "The issue on appeal is whether a District Court of this state may dismiss a FELA action because it deems itself an inconvenient forum.  We hold that it may not." LaBella, 595 P.2d at 1185.

Facing squarely for the first time the relation of forum non

7

conveniens to FELA actions, we discussed at length the remedial purposes of the Act along with its legislative history and interpretive precedent under federal case law requiring liberal construction of the Act in favor of the injured worker. LaBella, 595 P.2d at 1186-87. We also acknowledged federal authority to the effect that "[n]otwithstanding the strong policy favoring plaintiffs' forum selection" under the Act, such actions were transferable under 28 U.S.C. § 1404(a), and that a state court could dismiss a FELA case on forum non conveniens grounds "[a]ccording to its own notions of procedural policy," citing Ex parte Collett (1949), 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed 1207, 10 ALR 2d 921, and Mayfield. LaBella, 595 P.2d at 1187.

While recognizing our ability to adopt the doctrine of forum non conveniens in non-resident FELA cases, we, nevertheless, unequivocally declined to do so. We first pointed out that this state's public policy, dictated by Article II, Section 16, of our Constitution, requires that our courts "shall be open to every person, and speedy remedy afforded for every injury to person, property or character." We noted that constitutional right was unrestricted by reference to citizenship or residence and that any such qualification could not pass muster under the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution. LaBella, 595 P.2d at 1187. We then cited § 49-1-204, MCA, which mandates equality of rights and duties for United States citizens who are not citizens of Montana; and we found "highly persuasive" the policy favoring the injured railroad

worker's choice of forum.

From that analysis we were compelled "to hold the doctrine of forum non conveniens inapplicable to FELA suits filed in Montana District Courts." LaBella, 595 P.2d at 1187. Moreover, we pointed out that we had not been confronted with the application of forum non conveniens in non-FELA cases and that our decision neither denied nor recognized the existence of the doctrine "in cases where there is no strong policy favoring plaintiffs' forum selection." LaBella, 595 P.2d at 1187. Having said all that, we, inexplicably, again mentioned our warning from Great Northern concerning reexamination of this issue in the event of a substantial increase in this type of litigation. LaBella, 595 P.2d at 1187.

In the same year we handed down our decision in LaBella, 1979, we decided one other case involving the forum non conveniens/FELA issue. In Bevacqua v. Burlington Northern, Inc. (1979), 183 Mont. 237, 598 P.2d 1124, a non-resident FELA case filed and subsequently dismissed in Cascade County on forum non conveniens grounds, we reversed the district court citing LaBella and Montana's "open door" (open court) policy. Bevacaua, 598 P.2d at 1125.

Similarly, eight years later in State ex rel. Burlington Northern v. Dist. Ct., Eighth Jud. Dist. (1987), 223 Mont. 325, 746 P.2d 1077, another non-resident FELA case filed in Cascade County, the relator again raised the issue of county taxpayer funding and judicial resources being utilized in cases where the plaintiff's injury occurred in another state and where counsel and the fact witness had no connection with Montana. Burlington Northern, 746

9

P.2d at 1078-79. Referencing our decisions, in Bracy, Great Northern, LaBella and Bevacaua, and acknowledging that filing out-of-state FELA cases in Montana may constitute forum shopping, Burlinston Northern, 746 P.2d at 1080, we, nevertheless, rejected BN's statistics as failing to demonstrate a "substantial increase" in FELA cases "so as to show an intolerable burden on this state in maintaining its 'open door' policy and meeting the obvious intention of the federal statute [supporting the FELA plaintiff's ability to choose his forum]." Burlington Northern, 746 P.2d at 1080.

Finally, our most recent consideration of this issue was in two consolidated cases filed in Cascade County. Haug v. Burlington Northern and Lay v. Burlington Northern (1989), 236 Mont. 368, 770 P.2d 517 (the consolidated cases being cited as Haug). While both FELA cases, Haug and Lay were factually somewhat different than the previously discussed cases as those all involved the plaintiff being injured out-of-state. In Haug, both plaintiffs were injured in Montana--Haug in Park County and Lay in Lewis and Clark County. Haug, 770 P.2d at 518. In arguing that Montana's venue statutes required that the two cases be transferred to the respective counties where the injuries occurred, BN maintained that Cascade County, having no connection with either lawsuit, was not a proper place for trial. Haug, 770 P.2d at 518.

We disagreed. First, overruling McAlear v. Kasak (1987), 225 Mont. 113, 731 P.2d 908, we determined that §§ 25-2-115, 25-2-118(2), 25-2-122 and 25-z-201, MCA (1985), permitted plaintiff the

10

**choice of filing his tort claim against the non-resident defendant,** BN, in either the county where the tort was committed or in any county of this state. Haug, 770 P.2d at 519. Next, treating the issue as one of first impression, we held that our statutory interpretation was also applicable to FELA cases. Haug, 770 P.2d at 520. In so holding, we again acknowledged that venue in FELA cases is properly left to the practice of the forum, but, notwithstanding, we focused on the policy arguments expressed in LaBella and Montana's "open door" policy in reaching our conclusion. Haug, 770 P.2d at 520.

We then addressed the issue of whether the trial court is empowered to change the place of trial of FELA actions in light of the doctrine of forum non conveniens and the Montana venue statutes. Haug, 770 P.2d at 521. By way of dicta, we first observed that the doctrine had been "codified" in § 25-2-201(2) and (3), MCA. Haug, 770 P.2d at 521. Noting that our previous discussions of forum non conveniens in FELA cases had not made reference to our statutory scheme or to the "codification of that doctrine," we again however, focused on the rationale and policies of our prior cases--i.e., Montana's "open court" or "open door" policy, the policy favoring the FELA plaintiff's choice of forum, the policy of liberally interpreting the Act to effect its remedial purposes--and the failure to demonstrate any substantial increase in imported FELA litigation. Haug, 770 P.2d at 521. Determining that our "foregoing case analysis under the doctrine of forum non conveniens applies equally to the provisions allowing a court to

11

change the place of trial in § 25-Z-201, MCA," we then held that "in FELA cases neither the doctrine of <u>forum non conveniens,</u> nor the right to change the place of trial contained in § 25-z-201, MCA, is available." <u>Haug,</u> 770 P.2d at 522.

From a close reading of our cases starting with <u>Bracy</u> and concluding with <u>Haug,</u> several clearly identifiable rules and rationale emerge as regards claims of improper or inconvenient venue in FELA actions filed in Montana:

First, we have acknowledged that under federal case law, venue in FELA actions filed in state court is left to the practice of the forum state and that a state is not compelled to entertain FELA cases brought in its courts, but can reject, as it may accept, the doctrine of <u>forum non conveniens</u> for all causes of action begun in its courts, providing that it does so on a nondiscriminatory basis. See, <u>Great Northern, LaBella, Burlington Northern</u> and <u>Haug.</u>

Second, we have neither accepted nor rejected the application of <u>forum non conveniens</u> in non-FELA cases and we have neither denied nor recognized the existence of that doctrine in cases where there is no strong policy favoring plaintiff's forum selection. See, <u>Bracy, LaBella, Burlington Northern</u> and <u>Haug.</u> In that regard BN argues that we have accepted the doctrine of <u>forum non conveniens</u> in non-FELA cases, citing Application of Bertelson (1980), 189 Mont. 524, 617 P.2d 121 (child custody action); Columbia Falls Alum. v. Hindin/Owne/Engelke (1986), 224 Mont. 202, 728 P.2d 1342 (contract action); and Simmons v. State (1983), 206 Mont. 264, 670 P.2d 1372 (negligence action). We disagree. None

12

of these cases dealt with the application of <u>forum non conveniens,</u> but instead, dealt with the issue of the propriety of jurisdiction. Montana has yet to apply the common law doctrine of <u>forum non conveniens</u> in any non-FELA case, and, obviously, this case does not resolve that issue one way or the other.

Third, we have uniformly refused to allow application of the common law doctrine of <u>forum non conveniens</u> in FELA cases, whether the injury occurred in Montana or in some other state and regardless of the residence or citizenship of the plaintiff. See, <u>Bracy</u>, <u>Great Northern, LaBella, Bevacqua, Burlington Northern,</u> and <u>Haug</u>.

Fourth, while we have seemingly left the door open to reexamine the application of <u>forum non conveniens</u> to non-resident FELA cases filed in Montana in the event of substantial increases in filings of those types of cases, (See, <u>Great Northern, LaBella, Bevacqua, Burlington Northern</u> and <u>Haug</u>), we have, at the same time, uniformly rejected application of the doctrine to such cases because:

1. under federal case law FELA is to be given a liberal construction in favor of injured railroad employees so that it may accomplish its humanitarian and remedial purposes; See, <u>LaBella, Bevacqua,</u> and <u>Haug</u>;

2. we have found "highly persuasive" the policy favoring the injured worker's choice of forum, (See, <u>LaBella, Burlington Northern</u> and <u>Haug</u>), even if that choice of forum involves forum shopping, <u>Burlington Northern,</u> 746 P.2d at 1080. (Moreover, while

13

not discussing the application of the doctrine of _forum non conveniens_ to FELA cases, but consistent with that prior case law, we recently reemphasized our commitment to "the strong national policy favoring a plaintiff's selection of forum in actions brought under the Federal Employer's Liability Act." Ford v. Burlington Northern R. Co. (1991), 250 Mont. 188, 197 819 P.2d 169, 175 affirmed ___ U.S.___, 112 S.Ct. 2184, 119 L.Ed.2d 432);

3. Montana maintains an "open court" or "open door" policy, in that our Constitution requires that our courts shall be open to every person, unrestricted by residence or citizenship, and a speedy remedy shall be afforded for every injury to person, property or character. (See, _LaBella, Bevacqua, Burlington Northern,_ and _Haug_); and

4. section 49-1-204, MCA, mandates that United States citizens who are not Montana citizens are, nevertheless, entitled to the same rights and duties as citizens of this State. (See, _LaBella_).

Fifth, even under Montana's venue statutes, we have rejected the application of the doctrine of _forum non conveniens_ in FELA cases. _Haug_, 770 P.2d at 522. In that regard, while dicta in _Haug_ states that the doctrine of _forum non conveniens_ was "codified" in § 25-2-201, MCA, _Haug_ 770 P.2d at 521, we do not reaffirm here that such statement is necessarily correct. Suffice it to say, that while § 25-2-201(2) and (3), MCA, clearly authorize a district court to change the place of trial from one Montana county to another Montana county--an interpretation consistent with the actual facts before this Court in _Haug_ and _Lay_--we do not construe

14

that statute as providing authority for a trial court to dismiss altogether a case filed in Montana on the premise that, theoretically, it can more conveniently be tried in some other state or jurisdiction outside of the Montana court system.

In summary, while fully recognizing our ability to accept or to reject the nondiscriminatory application of the doctrine of forum non conveniens to non-FELA cases and to FELA cases, whether denominated as resident or non-resident, in light of the clear and unambiguous rationale of our prior case law discussed at length above, and notwithstanding our statements of apparent willingness to reexamine our refusal to apply the doctrine of forum non conveniens to FELA cases based on the numbers of out-of-state filings in Montana, we conclude that our paramount constitutional and statutory mandates and the policy reasons which we have repeatedly cited for denying application of the doctrine in FELA cases must, once and for all, take precedence over lesser concerns of alleged overcrowding of local court dockets.

The clear requirements of Article II, Section 16 of Montana's Constitution and of § 49-1-204, MCA, and the important policy reasons supporting a liberal construction of the Act in favor of the injured worker and the FELA plaintiff's choice of forum simply cannot be denigrated to a secondary position because of the impact--whether theoretical or real--of the filing of these types of cases on the dockets of local Montana courts. When balanced against the mandates of our Constitution, our statute and the policies underpinning the Act which are adopted and expressed in our own cases spanning three and one-half decades, applying forum non

15

*conveniens* to FELA actions because of docket overcrowding is simply *non sequitur.* That we opened such a door in the first place and then allowed it to remain open for so long, speaks not so much to the merits of the argument, as it does to our simple failure to concede its obvious infirmity.

We again hold, as we clearly did in *LaBella*, that a district court in this state may not dismiss a FELA action because it deems itself to be an inconvenient forum. We again hold, as we clearly did in *Haug*, that a district court in this State is not empowered to change the place of trial of a FELA action based on the doctrine of *forum non conveniens*, whether the common law variety or, arguendo, as codified in § 25-2-201, MCA. Moreover, in light of the mandates of Article II, Section 16 of our Constitution, § 49-1-204, MCA, and the policies underpinning the Act which are adopted and expressed in our own cases spanning more than thirty years, we will not, henceforth, reexamine this issue on the basis of the numbers of out-of-state FELA cases filed in Montana's district courts.

In light of our discussion above and our holding on Issue I., we conclude that it is unnecessary to further address Issues II., III., and IV.

Accordingly, we decline to issue a writ of supervisory control ordering the Eighth Judicial District Court to dismiss Plaintiff's complaint on the basis of *forum non conveniens,* and BN's application for such a writ is DENIED.

_____
                                    Justice

we concur:

_____
        Chief Justice

_____

**_____

_____
        Justices.


**Honorable Robert S. Keller, District Judge, sitting in place of Justice John C. Harrison, Retired.

17

Justice Fred J. Weber dissents as follows:

I respectfully dissent from the majority opinion. I am particularly concerned with the breadth of the opinion and its elimination of the ability of district courts to dismiss a FELA action on a forum non conveniens theory.

The majority relies on LaBella. While LaBella did state that the district court in that case could not dismiss a FELA action because it deems itself an inconvenient forum, it did not make this determination binding under all future conditions. The majority has done that with its choice of wording: ". . . we conclude that the numbers, whether accurate or inaccurate, are not dispositive of this Issue and that the time has come to clarify, once and for all, the law to be applied henceforth . . ." I do not agree with such a pronouncement.

In considering LaBella, we should look at the analysis in that case. In LaBella this Court went back to the 1907 message by President Theodore Roosevelt and discussed the 1910 Senate Committee report which sets forth an analysis that the LaBella Court suggested was still applicable. While the discussion of these historical messages was correct, I suggest the reason for the application of the principles is no longer present in Montana. President Roosevelt was greatly concerned about the safety of railway workers and the railroads' lack of concern for the welfare and safety of its employees. Subsequent to that time, FELA was passed and affords significant protection to railroad workers. The conditions in Montana are no longer similar to those of eighty

18

years ago.   I therefore suggest that the rationale is actually outdated when considering railroads and their employees today.

While not discussing the change, LaBella points out that the federal court systems are no longer bound by the requirements of FELA in this context.   That is because 28 U.S.C. 1404(a) was enacted in 1948 and provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

As a result, the open court policy along the entire lines of the railroad as provided in FELA is no longer applied by the federal government.   Had this case been filed in federal court in Montana, the Federal District Court had the discretion under § 1404(a) to transfer the case to Wyoming on the basis set forth in the statute, which is essentially a forum non conveniens theory.

While FELA has not been repealed by the Congress, 28 U.S.C. 1404(a) effectively neutralizes its provisions in this respect as to federal courts.

The majority mentions our Haug case.   Haug held that in the event of a substantial increase of filings, the door was left open to reexamine the application of forum non conveniens to future non-resident FELA cases.   The opinion here makes the determination for all future courts that an increase in the number of non-resident FELA cases is irrelevant and will never be considered.   I question that we should attempt to make such a determination.   It is the district courts which are in the position of considering the effect of the filing of non-resident FELA cases.   In the event there are

19

sufficient filings to impair the functioning of any of such courts, we should not presume to eliminate their capacity to apply the doctrine of forum non conveniens. Unfortunately the opinion completely dismisses the idea that the number of non-resident FELA cases could significantly impair the functioning of Montana courts. I do not conclude that our Montana Constitution requires that we maintain a court system which shall be at all times sufficient to allow the trial in this State of FELA cases from throughout the United States where there is no connection to the State of Montana other than the fact that the railroad runs through this State. I dissent from the majority opinion.

_____
Justice

Chief Justice J. A. Turnage concurs in the foregoing dissent.

_____
Chief Justice

20

Justice James C. Nelson specially concurs as follows:

In view of certain statements made by the dissent, I feel compelled to make a response.

First, while the dissent seems to believe that, at some point in the future, the "numbers of cases" argument might become relevant, that ignores the fact that this argument was interjected into our case law as nothing more than an afterthought in the Great Northern case. We paid mere lip service to the argument in that case and have given nothing more than the most cursory lip service to the argument in every case in which it has been raised ever since. As our opinion points out, in every case dealing with the FELA/forum non conveniens issue, we have rejected application of the doctrine and, instead, have grounded our decision in the humanitarian and remedial policies of the Act, in the policy favoring the claimant's choice of forum, on the open court provisions of Montana's Constitution and on § 49-1-204, MCA. Those being the substantive grounds for our past decisions, it begs the question, "What if some future litigant does show that there is actually a 'numbers' problem?" Will that change the humanitarian and remedial policies underpinning the Act, the policy favoring the claimant's choice of forum, the provisions of our Constitution or § 49-1-204, MCA? I submit that, absent some substantial change in federal law, in our State Constitution and in Montana's statutory law, none of which are within the reach of this Court, the reasons why we have rejected application of the forum non conveniens doctrine in FELA cases for the last thirty years will be the same

21

in the future, numbers or no numbers.  Given the rationale for our past decisions and the current state of the law, the "numbers" argument is, in fact, irrelevant.

Second, that federal courts may transfer FELA cases between different federal courts in different states under the doctrine of forum non conveniens or under federal statutory law is not the issue.  Montana has not adopted the common law doctrine of forum non conveniens in any case, FELA or non-FELA, and, the dicta in Haug notwithstanding, Montana does not have a forum non conveniens statute akin to 28 U.S.C. § 1404(a).  While the dissent maintains that FELA has been effectively "neutralized" by Congress' adoption of 28 U.S.C. § 1404(a) (a conclusion that, I suspect, may come as a shock to courts, litigants and practitioners), it is not clear why, how or under what authority this Court should apply federal statutory law applicable to federal cases in our State court proceedings.  I am at a loss to understand why the federal forum non conveniens statute is even relevant to our inquiry here.

Third, and finally, I disagree with the dissent's basic premise.  Our opinion is not broad at all.  We simply follow thirty years of clear and unequivocal precedent established in our own case law in stating, in effect, that we are taking a theory that was dead on arrival to begin with off of life support.  If the dissent wants to keep reexamining this issue every few years, then I submit that it is obligated to explain why the policies underpinning the Act and our prior cases have suddenly, after three decades, changed, and while Article II, Section 16, of our

22

Constitution and § 49-1-204, MCA, really do not mean what we have repeatedly said they do. There is no legal basis to reexamine this issue. There was no legal basis for the numbers argument in the first place (as we have implicitly acknowledged for thirty years), and, unless the law and Constitution are changed, there will be no basis for that argument in the future. Breathing into a corpse periodically simply will not bring it to life.

_____
Justice

Justices Karla M. Gray and Terry N. Trieweiler join in the foregoing special concurrence.

_____
Justices

23