No. 90-557/90-558

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

WILLIAM D. FORD,

    Plaintiff and Respondent

    v.

BURLINGTON NORTHERN RAILROAD
COMPANY, a Delaware corporation,

    Defendant and Appellant,

THOMAS L. JOHNSON,

    Plaintiff and Respondent,

    v.

BURLINGTON NORTHERN RAILROAD
COMPANY, a Delaware corporation,

    Defendant and Appellant

**FILED**

AUG 12 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding;
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kurt W. Kroschel, Russell D. Yerger,
        Kurt W. Kroschel & Assoc., Billings, Montana

    For Respondent:

        Robert S. Fain, Jr., James C. Reuss, Wright
        Tolliver & Guthals, P.C., Billings, Montana;
        Gary K. Wood, Morrisard & Rossi, P.C.,
        Aurora, Colorado

Submitted on Briefs:  April 18, 1991

Decided:  August 12, 1991

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The plaintiffs, William D. Ford and Thomas L. Johnson, filed separate actions in the District Court for the Thirteenth Judicial District, Yellowstone County, pursuant to the Federal Employers Liability Act found at 45 U.S.C. §§ 51-60. The defendant in both cases, Burlington Northern Railroad Company, moved to transfer venue to Hill County for the reason that that county was its principal place of business in Montana, and therefore, should serve as its residence for purposes of determining proper venue.

In reliance on our decision in *Haug v. Burlington Northern R. Co.* (1989), 236 Mont. 368, 770 P.2d 517, the District Court denied defendant's motion in both cases. From those orders denying defendant's motion for change of venue, defendant appeals. Those cases have been consolidated for purposes of appeal. We affirm the District Court.

Defendant raises the following issue on appeal:

Does § 25-2-118, MCA, as applied by this Court, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by treating nonresidents, such as defendant, differently than residents for purposes of venue without any rational basis for dissimilar treatment?

## FACTUAL BACKGROUND

Plaintiffs are both residents of Sheridan, Wyoming. Johnson alleges in his complaint that he was injured during the course of his employment with defendant on August 22, 1987, while working as

2

a locomotive engineer. Ford alleges in his complaint that he was injured on February 7, 1989, while employed by defendant as a brakeman. Both plaintiffs were injured while working on their employer's premises in Sheridan, Wyoming. Both have alleged that defendant failed to provide them with a safe place to work at that location.

Defendant is a railroad operating in interstate commerce. It is incorporated in the state of Delaware, and its principal place of business is Fort Worth, Texas. It operates its business in several Montana counties, including Yellowstone County. However, it alleges, and for purposes of this appeal, we will assume that its Montana headquarters are located in Hill County.

Plaintiffs' exclusive remedy for injuries sustained during the course of their employment with the railroad is their claim pursuant to the Federal Employers Liability Act, 45 U.S.C. §§ 51-60. Section 56 of the Act provides that an action to enforce rights granted by the Act can be brought in either federal or state courts, and establishes venue in those cases where the action is brought in federal court. Section 56 provides in relevant part as follows:

> Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several states.

Defendant does not deny that it does business in Yellowstone County, Montana, and that if plaintiffs had chosen the federal district court as their forum, defendant could have been properly sued in the federal district court located in Billings, Montana. Furthermore, section 56 has been the law for over 80 years. Its effect has always been to treat railroads differently than other parties. However, defendant cites no authority holding that it is unconstitutional for that reason.

Defendant objects to the rule by which venue was established in this case under state law.

We apply state law to determine proper venue in this case pursuant to *Miles v. Illinois Central R. Co.* (1942), 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129, in which the U.S. Supreme Court established that rules of venue in FELA actions filed in state courts are properly left to the various states.

In Montana, the general venue statute is § 25-2-118, MCA, which provides as follows:

Unless otherwise specified in this part:

(1) except as provided in subsection (3), the proper place of trial for all civil actions is the county in which the defendants or any of them may reside at the commencement of the action;

(2) if none of the defendants reside in the state, the proper place of trial is any county the plaintiff designates in the complaint . . . .

4

In *Haug*, 770 P.2d 517, we held that § 25-2-118, MCA (1989), allowed plaintiffs in FELA actions to sue out-of-state residents, such as defendant, in any county in the state.

We stated:

> From the case history in Montana, we conclude that a plaintiff is entitled to bring a tort action against a non-resident defendant in either the county where the tort occurred or in any county of this state. This Court has consistently held that a foreign corporation has no county of residence for venue purposes and can be sued in any county selected by the plaintiff. *Hanlon v. Great Northern Railway Co.* (1928), 83 Mont. 15, 268 P. 547; *Truck Insurance Exchange v. N.F.U. Property & Casualty Co.* (1967), 149 Mont. 387, 427 P.2d 50; *Foley v. General Motors Corp.* (1972), 159 Mont. 469, 499 P.2d 774. The holdings of these cases are consistent with the provisions of § 25-2-118(2), MCA, which in substance states that any county designated by the plaintiff is the proper place of trial if no defendants reside in Montana.

*Haug*, 770 P.2d at 519.

It is defendant's position that Montana's venue statute, as applied by this Court in *Haug*, discriminates against out-of-state corporations without any apparent justification, and therefore, denies defendant equal protection under our state's laws.

## DISCUSSION

Although there is some inconsistency in the federal case law, our decision appears to be controlled by a series of U.S. Supreme Court decisions, beginning with *Cincinnati Street Ry. Co. v. Snell* (1904), 193 U.S. 30. In that case, the defendant railroad was sued in the county of its principal place of business. The plaintiff was allowed to transfer venue to an adjoining county based upon a venue

5

statute which permitted transfer where one of the parties was a corporation with more than 50 stockholders, and the action was pending in the county in which the corporation had its principal office or transacted its principal business. It was the defendant's position that equal protection of the laws was denied because an equal opportunity to transfer venue was not conferred on the corporation. The U.S. Supreme Court held that the Fourteenth Amendment does not guarantee citizens the right to have disputes determined in one forum, as opposed to another. It stated:

> As previously shown, the Supreme Court of the State of Ohio pointed out in its opinion that the rights of the parties were governed in the court to which the case was transferred by the same law and the same rules which would have prevailed had the case been tried in the court in which it was originally brought. And this has not been challenged either by the assignments of error or any of the arguments made to sustain them. The proposition to which the case reduces itself is therefore this: That although the protection of equal laws equally administered has been enjoyed, nevertheless there has been a denial of the equal protection of the law within the purview of the Fourteenth Amendment, only because the State has allowed one person to seek one forum and has not allowed another person, asserted to be in the same class, to seek the same forum, although as to both persons the law has afforded a forum in which the same and equal laws are applicable and administered. But it is fundamental rights which the Fourteenth Amendment safeguards and not the mere forum which a state may see proper to designate for the enforcement and protection of such rights. Given therefore a condition where fundamental rights are equally protected and preserved, it is impossible to say that the rights which are thus protected and preserved have been denied because the State has deemed best to provide for a trial in one forum or another. It is not under any view the mere tribunal into which a person is authorized to proceed by a state which determines whether the equal protection of the law

6

has been afforded, but whether in the tribunals which the state has provided equal laws prevail.

It follows that the mere direction of the state law that a cause under given circumstances shall be tried in one forum instead of another, or may be transferred when brought from one forum to another, can have no tendency to violate the guarantee of the equal protection of the laws where in both the forums equality of law governs and equality of administration prevails. In *Iowa Central Railway Company v. Iowa*, 160 U.S. 389, 393, this Court said:

> "But it is clear that the Fourteenth Amendment in no way undertakes to control the power of a State to determine by what process legal rights may be asserted or legal obligations be enforced, provided the method of procedure adopted for these purposes gives reasonable notice and affords fair opportunity to be heard before the issues are decided. This being the case, it was obviously not a right, privilege or immunity of a citizen of the United States to have a controversy in the state court prosecuted or determined by one form of action instead of by another."

*Cincinnati Street Ry. Co.*, 193 U.S. at 36-37.

It is defendant's position that this issue is controlled by the Supreme Court's decision in *Power Mfg. Co. v. Saunders* (1927), 274 U.S. 490, 47 S.Ct. 678. In that case, the defendant corporation, which was a resident of Ohio, was sued by one of its employees in the state of Arkansas. It was sued in a county other than the county where its principal place of business was located. For that reason, it challenged the Arkansas venue statute which required that actions of that type against a resident corporation be brought in the county where it had a place of business or in which its chief officer resided, but permitted actions against foreign

7

corporations to be brought in any county in the state. In that case, where the defendant did no business and had no office, officer, or agent in the county where suit was brought, the Supreme Court found no rational basis for distinguishing between foreign and domestic corporations, and held that since discriminatory treatment was without a reasonable basis and essentially arbitrary, it violated the Equal Protection Clause of the Fourteenth Amendment.

We find that the *Saunders* case is not controlling for several reasons.

First, *Saunders* is distinguishable on its facts. In that case, the defendant did no business in the county where venue was established. In this case, defendant admittedly does business in Yellowstone County. In *Saunders*, plaintiff's action was brought pursuant to the common law of the state of Arkansas. In this case, plaintiffs' claims are based upon federal statutory law which was designed to provide injured railroad workers with as many options as possible when choosing the venue within which to file their complaint.

Second, the *Saunders* decision did not preclude disparate treatment under a state's venue laws where a rational basis could be shown for such treatment. In fact, when referring to the requirements of the Fourteenth Amendment, that Court stated:

> It does not prevent a State from adjusting its legislation to differences in situation or forbid

classification in that connection; but it does require that the classification be not arbitrary but based on a real and substantial difference having a reasonable relation to the subject of that particular legislation.

. . . the distinguishing principle being that classification must rest on differences pertinent to the subject in respect of which the classification is made.

*Saunders*, 274 U.S. at 493-94 (citations omitted).

Without addressing the greater issue of whether there is a rational basis for treating all out-of-state corporations differently from all domestic corporations, it does appear that there is a commonly accepted historic justification for allowing railroad workers greater flexibility when choosing a forum than other litigants. In *LaBella v. Burlington Northern, Inc.* (1979), 182 Mont. 202, 595 P.2d 1184, we cited the following legislative history for 45 U.S.C. § 56, which would determine venue if plaintiffs had brought their action in federal court.

In a Senate Committee Report, the purpose of the amendment to section 6 H.R. 17263, 61st Cong., 2d Sess. (1910), was said to be:

". . . to make entirely manifest the good faith of the legislature in the enactment of the employers liability law, which places such stringent liability upon the railroads for injuries to their employees as to compel the highest safeguarding of the lives and limbs of the men in this dangerous employment. The tremendous loss of life and limb on the railroads is appalling . . .

"It was the intention of Congress in the enactment of this law originally and it may be presumed to be the intention of the present Congress to shift the burden of the loss resulting from these casualties from 'those least able to bear it' and place it on those

who can . . . 'measurably control their causes'." Sen.Rep.No. 432, 61st Cong., 2d Sess., (1910), 45 Cong.Rec. 4041 (1910).

In reporting the bill out of committee, Senator Borah stated his objection to the law as it existed:

"Plaintiff may sometimes be compelled to go a great distance in order to have his cause of action against the defendant by reason of the fact that now the action must be brought in the district in which the defendant is an inhabitant . . .

". . . If this bill should be passed, the law will be remedied in that respect, enabling the plaintiff to bring his action where the cause of action arose or where the defendant may be doing business. The bill enables the plaintiff to find the corporation at any point or place where it is actually carrying on business and there lodge his action, if he chooses to do so." 45 Cong.Rec. at 4034-4035 (1910).

The strength of the policy behind section 6 can be further gleaned from Congress' refusal to pass the Jennings Bill in 1947. It would have repealed most of section 6 and limited the forum choices of injured railroad workers to the district where the cause of action arose or where the plaintiff resided. If process could not be served in either of those places, an action could be brought where defendant was doing business. H.R. 1639, 80th Cong. 1st Sess., (1947).

*LaBella*, 595 P.2d at 1186.

It is clear then that national policy, dating back to 1910, which was intended to address the dangerous working conditions of railroad workers and to facilitate recovery for families of injured workers, favors a policy of allowing railroad workers to sue their employer at any location where the employer does business. That

10

national policy presents a justification for disparate treatment in this case, which was not present in the *Saunders* case.

Finally, subsequent decisions by the U.S. Supreme Court raise a question about whether *Saunders* continues to be good law.

Initially, *Saunders* was not a unanimous opinion. Mr. Justice Holmes, with whom Mr. Justice Brandeis concurred, dissented from the majority opinion. He argued that:

> A foreign corporation merely doing business in the State and having its work elsewhere will be more or less inconvenienced anywhere away from its headquarters, but the difference to it between one county and another is likely to be less than it will be to a corporation having its headquarters in the State. So I repeat that in my opinion the plaintiff in error cannot complain if the State holds it liable to a transitory action wherever it may be served and sued, as it would have been liable at common law.

*Saunders*, 274 U.S. at 498.

Not long after the *Saunders* decision, Mr. Justice Holmes wrote for the majority in *Bain Peanut Co. v. Pinson* (1931) 282 U.S. 499, when the Supreme Court denied a challenge to a Texas venue statute based on the Equal Protection Clause.

In *Bain Peanut Co.*, the Texas venue statute being challenged allowed plaintiffs to sue a private corporation in the county where an action arose, but limited suits against unincorporated individuals to the county in which they were domiciled. The defendant corporation challenged that disparate treatment as a violation of the Equal Protection Clause of the Fourteenth

11

Amendment. In denying the defendant's challenge, Justice Holmes, now writing for the majority, indicated that that Court's prior decision in *Cincinnati Street Ry. Co.*, was still controlling. The court held as follows:

> Coming then to the merits, we are of the opinion that the judgment was right. The interpretation of constitutional principles must not be too literal. We must remember that the machinery of government would not work if it were not allowed a little play in its joints. In deciding whether a corporation is denied the equal protection of the laws when its creator establishes a more extensive venue for actions against it than is fixed for private citizens, we have to consider, not a geometrical equation between a corporation and a man, but whether the difference does injustice to the class generally, even though it bear hard in some particular case, which is not alleged or proved here. *Louisville & Nashville R. Co. v. Barber Asphalt Paving Co.*, 197 U.S. 430, 434. *Patsone v. Pennsylvania*, 232 U.S. 138, 144. This it is for the corporation to make out. The range of the State's discretion is large. *Armour & Co. v. North Dakota*, 240 U.S. 510, 516, 517. The question seems to be answered by *Cincinnati Street Ry. Co. v. Snell*, 193 U.S. 30, 36, 37, which lays down that, if the protection of fundamental rights by equal laws equally administered is enjoyed, the Constitution does not forbid allowing one person to seek a forum from which another in the same class is excluded.

*Bain Peanut Co.*, 282 U.S. at 501.

More recently, in *American Motorist Ins. Co. v. Starnes* (1976), 425 U.S. 637, 96 S.Ct. 1800, 48 L.Ed.2d 263, *Cincinnati Street Ry. Co.* was again cited by the U.S. Supreme Court with approval. In *Starnes*, the defendant, an out-of-state corporation, challenged Texas' venue statutes which treated domestic and foreign corporations differently. Domestic corporations had to be sued in the county

12

in which they were domiciled unless plaintiff, at a preliminary hearing, could prove by a preponderance of the evidence that he had a cause of action. Foreign corporations could be sued in counties other than their Texas domicile without a similar procedural requirement. The defendant challenged the disparate treatment on the grounds that it constituted invidious discrimination against foreign corporations in violation of the Equal Protection Clause of the Fourteenth Amendment. The Supreme Court denied defendant's challenge to the Texas venue statutes for the reason that as a practical matter there was no appreciable advantage for domestic corporations. The Supreme Court arrived at this conclusion after reviewing Texas case law which suggested that proving a prima facie case was sufficient and the venue proceedings against domestic corporations were usually truncated. In arriving at its decision, the Supreme Court cited with approval language from *Cincinnati Street Ry. Co.*, which is set forth above. However, in language relevant to this decision, that Court also stated:

> We are not confined to the language of the statute under challenge in determining whether that statute has any discriminatory effect. Just as a statute nondiscriminatory on its face may be grossly discriminatory in its operation, *Williams v. Illinois*, 399 U.S. 235, 242 (1970); *Griffin v. Illinois*, 351 U.S. 12, 17 n. 11 (1956), so may a statute discriminatory on its face be nondiscriminatory in its operation. There being no discriminatory effect achieved by the aspects of the Texas venue provisions calling for establishment of a cause of action, we have no difficulty in concluding that appellant's equal protection challenge to the Exception 27 must be rejected.

*Starnes*, 425 U.S. at 645.

13

In a footnote to the above statement, the majority noted:

[6]Our conclusion makes unnecessary consideration of appellant's argument that *Power Mfg. Co. v. Saunders*, 274 U.S. 490 (1927), requires invalidation of Exception 27. Though more recent decisions raise the question whether *Saunders* continues to be good law, *Allied Stores of Ohio v. Bowers*, 358 U.S. 522 (1959); *Metropolitan Cas. Ins. Co. v. Brownell*, 294 U.S. 580 (1935); *Bain Peanut Co. v. Pinson*, 282 U.S. 499 (1931), as appellant argues, the Court in *Saunders* did conclude that the venue statute involved there treated foreign corporations without reasonable basis and arbitrarily.

Mr. Chief Justice Burger, with whom Mr. Justice Rehnquist concurred, would have denied the defendant's challenge to the Texas venue statute simply on the basis of *Cincinnati Street Ry. Co.* and *Bain Peanut Co.*

Likewise, in this case the statute which is challenged by defendant is nondiscriminatory in its operation. The practical effect of our venue statute in this case is that defendant is required to defend itself in Yellowstone County, Montana--a location where it could admittedly be required to appear and defend itself against the same claim, had plaintiffs chosen to sue it in federal district court.

For all of the above reasons, we affirm the orders of the District Court, and hold that § 25-2-118, MCA (1989), as applied by this Court in *Haug* does not violate the Enqual Protection Clause of the Fourteenth Amendment to the United States Constitution.

As in *Haug*, our decision is based on the facts in this case, and in particular, the strong national policy favoring a

14

plaintiff's selection of forum in actions brought under the Federal Employers Liability Act.

We affirm the denial of defendant's motion for a change of venue.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

15