No. 96-163
No. 96-031
No. 96-115



IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

---

| NOLAN C. DAVIS, et al., | No. 96-163 |
|---|---|
| Plaintiffs and Respondents | On Appeal From the Second Judicial District, In and for the County of Silver Bow, The Honorable James E. Purcell, Judge Presiding. |
| v. | |
| UNION PACIFIC RAILROAD COMPANY, | |
| Defendant and Appellant. | |

---

| ROBERT W. HULL, | No. 96-031 |
|---|---|
| Plaintiff and Appellant, | On Appeal From the Eighth Judicial District, In and for the County of Cascade, The Honorable Robert Goff, Judge Presiding. |
| v. | |
| BURLINGTON NORTHERN RAILROAD COMPANY, a corporation, | |
| Defendant and Respondent. | |

---

| MICHAEL P. MIESEN, KYLE J. POINTER, and JOHN T. SAMTER, | No. 96-115 |
|---|---|
| | On Appeal From the Second Judicial District, In and For the County of Silver Bow, The Honorable John W. Whelan, Judge Presiding. |
| Plaintiffs and Respondents, | |
| v. | |
| BURLINGTON NORTHERN RAILROAD COMPANY, a corporation, | |
| Defendant and Appellant. | |

COUNSEL OF RECORD:

For Appellants:

J. Daniel Hoven (argued); Browning, Kaleczyc, Berry & Hoven; Helena, Montana; and Thomas R. Jayne; Thompson & Mitchell; St. Louis, Missouri (for appellant Union Pacific Railroad Company)

Jeff Hedger; Kroschel and Yerger; Billings, Montana (for appellant Burlington Northern Railroad Company)

Alexander Blewett III (argued); Hoyt & Blewett; Great Falls, Montana; and Chas. C. Dearden; Attorney at Law; Whitefish, Montana (for appellant Robert W. Hull)

For Respondents:

Frank B. Morrison, Jr. (argued) and Larry M. Elison; Morrisons, McCarthy & Moore; Whitefish, Montana; and James J. Shea; Bricker, Zakovics & Querin; Portland, Oregon (for respondents Davis, et al., Miesen, Pointer, and Samter)

Erik B. Thueson (argued), Micheal F. Lamb, and John A. Kützman; Thueson & Lamb; Helena, Montana (for respondents Nelson and Carter)

For Amici Curiae:

Elizabeth A. Brennan and William A. Rossbach; Rossbach & Whiston; Missoula, Montana (for Montana Trial Lawyers Association)

Thomas E. Hattersley and Teri A. Walter; Gough, Shanahan, Johnson & Waterman; Helena, Montana (for Pegasus Gold Corporation, TVX Mineral Hill, Inc., Golden Sunlight Mines, Inc., Luzenac America, Inc., Stillwater Mining Company, Phelps Dodge Corporation, and Canyon Resources Corporation)

Submitted: January 14, 1997

Decided: April 16, 1997

Filed:

Clerk

Justice Jim Regnier delivered the opinion of the Court.

The cases of Davis, et al. v. Union Pacific Railroad Company (hereinafter Union Pacific) and Hull, Miesen, Pointer, Samter, Nelson, and Carter v. Burlington Northern Railroad Company (hereinafter Burlington Northern) have been consolidated for our consideration since similar issues are raised in each case. These consolidated appeals involve railroad workers who have sued their employers for personal injuries under the Federal Employers Liability Act (FELA), 45 U.S.C. §§ 51-60 (1994).

The 1995 Montana Legislature amended Montana's venue statutes by adding subsection (2) to § 25-2-122, MCA, which provides specific venues for tort suits brought against nonresident corporations. In each case, the defendant, relying on the amended § 25-2-122, MCA, moved for a change of venue. Some district courts have granted the defendants' motions for change of venue and others have denied them, depending upon their respective interpretations of the amended statute.

The following issue is on appeal:

Does § 25-2-122(2), MCA, providing specific venues for tort suits brought against nonresident corporate defendants, violate constitutional guarantees of equal protection?

## FACTUAL BACKGROUND

In 1995, the Montana Legislature amended Montana's venue statutes by adding subsection (2) to § 25-2-122, MCA, restricting the choice of venue for plaintiffs bringing tort suits against nonresident corporate defendants. The statute at issue in this appeal provides:

> If the defendant is a corporation incorporated in a state other than Montana, the proper place of trial for a tort action is:
>     (a)     the county where the tort was committed;
>     (b)     the county in which the plaintiff resides; or
>     (c)     the county in which the corporation's resident agent is located,
> as required by law, or in the first judicial district.

Section 25-2-122(2), MCA.

Before the enactment of the 1995 amendment, § 25-2-118, MCA, the general venue statute, controlled the place of venue for a tort action against an out-of-state defendant, including a corporate defendant. Section 25-2-118, MCA, reads:

> Unless otherwise specified in this part:
>     (1)     except as provided in subsection (3), the proper place of trial for all civil actions is the county in which the defendants or any of them reside at the commencement of the action;
>     (2)     if none of the defendants reside in the state; the proper place of trial is any county the plaintiff designates in the complaint . . . .

In the action against Union Pacific, the plaintiffs allege that due to the negligence of Union Pacific, they have been exposed to loud noise in their workplace resulting in hearing loss. All plaintiffs reside outside of the state of Montana, and none of the acts or occurrences which form the bases of the complaints occurred in Montana. Defendant Union Pacific, is incorporated in the state of Utah, operating its railroad business in several Montana counties and has its registered agent for Montana located in Lewis and Clark County.

Each of the plaintiffs' FELA claims were filed in Silver Bow County, Montana. The defendant filed a motion for a change of venue based on the Legislature's amendment to § 25-2-122(2), MCA. This amendment became effective October 1, 1995. The plaintiffs all

4

filed their complaints in Silver Bow County after that date. The Second Judicial District Court ruled that Silver Bow County was an appropriate venue for their causes of action to be filed. The defendant then filed a motion for reconsideration and request for hearing. Following argument, the District Court reaffirmed the plaintiffs' right to bring the action in Silver Bow County, finding that the 1995 amendment to § 25-2-122, MCA, supplemented the more general venue provisions in § 25-2-118, MCA, to provide additional counties in which to file tort actions against nonresident defendants.

The cases that involve Burlington Northern share a similar procedural history to the Union Pacific cases. In the first case, plaintiff Robert Hull was a resident of Flathead County, where the alleged injury occurred. Burlington Northern is incorporated in Delaware and has its registered agent for Montana located in Lewis and Clark County.

Hull filed his FELA action in Cascade County on August 14, 1995. Burlington Northern filed a motion to change venue under the terms of § 25-2-122(2), MCA. Hull argued that since his complaint was filed prior to October 1, 1995, his case should be entitled to proceed in Cascade County. The Eighth Judicial District Court granted the motion for a change of venue to Flathead County under the terms of § 25-2-122(2), MCA, holding the change in the venue statute was procedural and not substantive. Thus, § 25-2-122(2), MCA, could be applied retroactively to a complaint filed before the effective date of the amendment.

In the second case, plaintiffs Meisen, Pointer, and Samter filed their FELA actions in Silver Bow County on September 26, 1995. Meisen was a resident of Flathead County, where his alleged injury occurred. Pointer and Samter were not residents of Montana and allege that they were injured in Nebraska and Idaho respectively. Burlington Northern filed a motion to change venue in each case. The Second Judicial District Court denied the motion for a change of venue on the grounds that § 25-2-122, MCA, provided an alternative to the more general venue provisions in § 25-2-118, MCA. On reconsideration, the District Court held that the amendment to the venue statute affected substantive rights and could not be applied retroactively to actions filed before the amendment became effective.

In the next case, plaintiffs Donnie Nelson and Larry Carter filed FELA actions against Burlington Northern in Cascade County. Nelson was injured on January 26, 1991, in Hill County, which was also where he resided at the time. Carter was injured on February 9, 1993, in Flathead County where he resided. Nelson filed his lawsuit on May 19, 1995. Carter filed his lawsuit on October 16, 1995. Burlington Northern filed motions to change venue based on the 1995 amendment to § 25-2-122, MCA, in both cases. In Nelson's case, the railroad argued that the 1995 amendment was retroactive and that it applied to Nelson's case, even though that case had been filed prior to the October 1, 1995, effective date. The Eighth Judicial District Court granted the railroad's motions in both cases pursuant to § 25-2-122(2), MCA.

For purposes of the following discussion, Davis, Hull, Miesen, Pointer, Samter, Nelson, Carter, and others will be referred to as "railroad workers." Union Pacific Railroad Company and Burlington Northern Railroad Company will be referred as the "railroad companies."

## STANDARD OF REVIEW

A legislative enactment is presumed to be constitutional and will be upheld on review except when proven to be unconstitutional beyond a reasonable doubt. *State v. Lilburn* (1994), 265 Mont. 258, 262, 875 P.2d 1036, 1039 (citing *City of Billings v. Laedeke* (1991), 247 Mont. 151, 154, 805 P.2d 1348, 1349).

There are limitations governing a court's ability to declare a statute unconstitutional. We take cognizance of the following cautions:

> [I]t is our sacred duty to measure the Act by the terms of our constitutional limitations, as we interpret them. "It must be evident to anyone that the power to declare a legislative enactment void is one which the judge, conscious of the fallibility of the human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility. The legislative and judicial are co-ordinate departments of the government of equal dignity; each is alike supreme in the exercise of its proper functions, and cannot directly or indirectly while acting within the limits of its authority be subjected to the control or supervision of the other without an unwarrantable assumption by that other of power which, by the Constitution, is not conferred upon it. The Constitution apportions the powers of governments but it does not make any one of the three departments subordinate to another when exercising the trust committed to it. The courts may declare legislative enactments unconstitutional and void in some cases, but not because the judicial power is superior in degree or dignity to the legislative. Being required to declare what the law is in the cases which come

7

before them, they must enforce the Constitution as the paramount law, whenever a legislative enactment comes in conflict with it."

*State, ex rel. Mills v. Dixon* (1923), 66 Mont. 76, 84-85, 213 P. 227, 229.

Additionally:

> When a legislative course of action expressed in statutes or budgetary laws is tested for constitutionality under the State Constitution, our review is circumscribed by certain principles. We must give the state constitutional provision a broad and liberal construction consistent with the intent of the people adopting it to serve the needs of a growing state. The constitutional provision should receive a reasonable and practical interpretation in accord with common sense. The constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be presumed, unless its unconstitutionality appears beyond a reasonable doubt. The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action which will not be declared invalid unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt.

*Fallon County v. State* (1988), 231 Mont. 443, 445-46, 753 P.2d 338, 339-40 (citations omitted). Furthermore, every possible presumption must be indulged in favor of the constitutionality of the Act. *See State v. Safeway Stores, Inc.* (1938), 106 Mont. 182, 199, 76 P.2d 81, 84.

Notwithstanding the deference that must be given to the Legislature when it enacts a law, it is the express function and duty of this Court to ensure that all Montanans are afforded equal protection under the law. Article II, Section 4, of the 1972 Montana Constitution states that:

> The dignity of the human being is inviolable. No person shall be denied equal protection of the laws. Neither the State nor any person, firm, corporation, or

institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas.

The principal purpose of the Equal Protection Clause, Article II, Section 4, of the Montana Constitution, is to ensure that persons who are citizens are not subject to arbitrary and discriminatory state action. *Godfrey v. State Fish & Game Comm'n* (1981), 193 Mont. 304, 306, 631 P.2d 1265, 1267.

## DISCUSSION

Does § 25-2-122(2), MCA, providing specific venues for tort suits brought against nonresident corporate defendants, violate constitutional guarantees of equal protection?

The railroad workers contend that the 1995 amendment to the venue statute, § 25-2-122(2), MCA, conflicts with Article II, Section 16, of the Montana Constitution, stating that the "[c]ourts of justice shall be open to every person." This part of Article II, Section 16, is commonly known as the "open access to the courts" provision. They challenge § 25-2-122(2), MCA, and assert that, without any showing of a compelling state interest, the statute denies a person's fundamental right to open access to the courts.

The railroad companies counter that, although the State Constitution guarantees a right of access to the courts, the Legislature retains the power to define the scope and extent of that right. The companies contend that the venue statute does not leave the railroad workers without access to the courts of Montana, but merely specifies available venues within the

state court system where they may bring tort lawsuits against nonresident corporate defendants.

When scrutinizing the constitutionality of legislation under an equal protection attack, this Court reviews the legislation under one of three recognized levels of scrutiny. The most stringent standard, strict scrutiny, is used when the action complained of infringes upon the exercise of a fundamental right or discriminates against a suspect class, such as race or national origin. *Gulbrandson v. Carey* (1995), 272 Mont. 494, 502, 901 P.2d 573, 579. Strict scrutiny has been limited to those instances when either a fundamental right has been infringed or a suspect classification has been established. Strict scrutiny requires the government to show a compelling state interest for its action. *Butte Community Union v. Lewis* (1986), 219 Mont. 426, 430, 712 P.2d 1309, 1311.

Middle-tier scrutiny has been used in limited situations, including those where the rights at issue have some origin in the Montana Constitution, such as welfare, but are not found in the Declaration of Rights. Middle-tier scrutiny requires the state to demonstrate that its classification is reasonable and that its interest in the classification is greater than that of the individual's interest in the right infringed. *Butte Community Union*, 219 Mont. at 434, 712 P.2d at 1314.

When the right under examination is not determined to be fundamental and does not warrant middle-tier scrutiny, it is reviewed under a rational basis test. This test requires the government to show that the objective of the statute was legitimate and bears a rational

10

relationship to the classification used by the Legislature. *Cottrill v. Cottrill Sodding Service* (1987), 229 Mont. 40, 744 P.2d 895.

The railroad workers strongly urge this Court to analyze the amendment to the venue statute under a strict scrutiny, or at the very least, a middle-tier test. They argue that restricting venue choices, especially to FELA claimants, limits their access to the courts and violates Article II, Section 16, of the Montana Constitution. Alternatively, if this Court concludes that venue rights are not the proper subject matter for strict scrutiny, the workers urge that their constitutional rights are at the very least "implicated" by the amendment and our analysis should proceed under a middle-tier test. *State ex rel. Bartmess v. School Dist. No. 1* (1986), 223 Mont. 269, 726 P.2d 801. The railroad companies argue that the classification at issue in § 25-2-122(2), MCA, involves neither a fundamental right nor a suspect class so the appropriate standard for review is the rational basis test.

In *Ford v. Burlington Northern R.R.* (1991), 250 Mont. 188, 819 P.2d 169, *aff'd*, 504 U.S. 648, 112 S. Ct. 2184 (1992), we applied the rational basis test when determining whether § 25-2-118, MCA, another venue statute, violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by treating nonresidents differently from residents for purposes of venue. We see no reason to adopt a different test in the present case. Limiting venue does not affect access to the courts, but rather specifies the appropriate venues available. Neither does venue implicate rights which require the application of the middle-tier test. Therefore, the Legislature may, in its discretion, fix the

11

venue or place of trial of civil actions so long as the statue it enacts does not violate equal protection of the laws and does not arbitrarily and unreasonably discriminate against a particular person. *Fraser v. Smith* (1954), 128 Mont. 160, 273 P.2d 105.

Using the rational basis test, this Court must determine if there is a legitimate governmental objective which bears some identifiable rational relationship to the discriminatory classification. *Godfrey*, 193 Mont. at 307, 631 P.2d at 1267.

> A classification that is patently arbitrary and bears no rational relationship to a legitimate governmental interest offends equal protection of the laws. As we have previously held, equal protection of the laws requires that all persons be treated alike under like circumstances.

*Tipco Corp., Inc. v. City of Billings* (1982), 197 Mont. 339, 346, 642 P.2d 1074, 1078 (citations omitted). In this instance, we must determine whether the amendment to the venue statute has a sufficiently reasonable relation to a proper legislative purpose so as not to be deemed arbitrary. A classification having some reasonable basis does not deny equal protection merely because it is not made with precise mathematical nicety or results in some inequality. *State v. Jack* (1975), 167 Mont. 456, 539 P.2d 726.

When analyzing equal protection claims under the rational basis test, this Court has struck down laws creating arbitrary classifications without a legitimate state interest as unconstitutional. *See, e.g., McKamey v. State* (1994), 268 Mont. 137, 885 P.2d 515 (holding requirement that firefighters be members of the military violative of equal protection); *Arneson v. State* (1993), 262 Mont. 269, 864 P.2d 1245 (holding that statute regarding

12

post-retirement increases in pension violated equal protection); *Brewer v. Ski-Lift, Inc.* (1988), 234 Mont. 109, 762 P.2d 226 (holding that portions of the "skier's responsibility" statutes violated equal protection); *Cottrill v. Cottrill Sodding Service* (1987), 229 Mont. 40, 744 P.2d 895 (holding workers' compensation statute requiring family members to elect special coverage unconstitutional); *Oberg v. City of Billings* (1983), 207 Mont. 277, 674 P.2d 494 (holding statute prohibiting polygraph tests except for law enforcement violated equal protection).

There is no question that under § 25-2-122(2), MCA, tort victims are not treated equally. Tort victims injured by nonresident corporations are subject to the restrictive venue limitations of § 25-2-122(2), MCA. Tort victims injured by individuals or other unincorporated, nonresident defendants are not subject to the venue limitations of § 25-2-122(2), MCA. They may still file their action in any county they wish, pursuant to § 25-2-118(2), MCA. The legislation clearly discriminates against the tort victim injured by a corporate nonresident. The question is whether or not there is a rational basis to make the classification.

The statute's constitutional defects are revealed when reviewed in light of its practical application. *Jack*, 167 Mont. at 462, 539 P.2d at 729. The following example illustrates how the classification leads to arbitrary results. If two Montana residents traveling west toward Missoula on I-90 were involved in separate car accidents, each as a result of an out-of-state defendant's negligence, both victims would have the option of filing a tort claim and suing

for damages in state court. If one defendant was an out-of-state individual, the victim may sue that person in any county in Montana. However, if the other defendant was an out-of-state corporation, the victim's choice of venue would be limited to (1) the county of his residence, (2) the county where the tort occurred, (3) the county where the out-of-state corporation has its resident agent, or (4) Lewis and Clark County.

In the example above, similarly situated plaintiffs are given vastly different venue options by the state. The statute, § 25-2-122(2), MCA, operates unequally on two different classes of people. One victim has the opportunity to file a tort action in any of Montana's fifty-six counties. However, the other victim's choice of venue is limited to a maximum of four counties, solely due to the corporate status of the defendant.

The railroad companies argue that the Legislature acted reasonably in distinguishing nonresident corporations as a class from other nonresident defendants. The railroads assert that as nonresident corporations, they are required to have a registered agent in Montana, pay license fees and other taxes to the state, and many of the corporations provide a livelihood to many Montanans. In contrast they argue that nonresident, noncorporate entities typically have only a transitory connection to the state, and thus, they can be reasonably distinguished from the class of nonresident defendants as a whole.

We do not find this argument persuasive. Corporations are not the only nonresidents that contribute substantially to the Montana economy. Both nonresident individuals, limited partnerships, and partnerships pay taxes, own property, and employ Montanans. It does not

14

appear that the statute was intended to benefit nonresidents because of their contributions to the state economy. By its operation, the statute discriminates against victims of nonresident corporations. The railroad companies have failed to show some legitimate state objective for the statute. When the Legislature changes venue statutes in such a way as to discriminate among plaintiffs as to their choice of forum, there must be a rational basis for that discriminatory impact. Here, there is no reasonable basis to the classification that permits a plaintiff injured by a nonresident individual to be able to file a claim in any county, while restricting plaintiffs who have been injured by a nonresident corporation to bring suit in a limited number of counties.

The railroad companies assert that § 25-2-122(2), MCA, does not deprive plaintiffs of equal protection by limiting their choice of venue. The railroad companies rely upon *Ford v. Burlington Northern R.R.* (1991), 250 Mont. at 197, 819 P.2d at 175, where this Court held that the venue statutes that discriminated between domestic and foreign corporations did not violate equal protection. Our analysis in *Ford*, however, focused on a class of corporate defendants. The defining distinction in the class was not the form in which they chose to do business, but their residency. Justice Souter pointed out in his opinion affirming this Court's decision that the Legislature arguably had a rational basis for the distinction.

In contrast to *Ford*, the classification in this case is based upon the form in which the defendants chose to do business. The complaining class is a group of plaintiffs who were injured by nonresident corporations. How can there be a rational basis to distinguish one

15

class of tort victims from another on the basis of the legal status in which the tort-feasor chose to do business? Furthermore, the cases cited by the railroad companies focused on the defendants' right to venue which is more limited than the rights of plaintiffs. Under Montana's venue statutes, plaintiffs have the right, within certain limits, to choose the venue when filing an action.

This Court also recognizes that there is a commonly accepted historical justification for allowing railroad workers greater flexibility than other litigants when choosing a forums. *See Ford*, 250 Mont. at 197, 819 P.2d at 175. In these tort actions, the plaintiffs are all railroad employees suing out-of-state corporate defendants for alleged injuries under FELA. Relying upon the statutory language of FELA and its humanitarian and remedial purposes, the United States Supreme Court has repeatedly noted that FELA is to be given a liberal construction in favor of injured railroad workers so that it may accomplish Congress's objectives. *Consolidated Rail Corporation v. Gottshall* (1994), 512 U.S. 532, 543, 114 S. Ct. 2396, 2404; *Urie v. Thompson* (1949), 337 U.S. 163, 180, 69 S. Ct. 1018, 1030.

In this Court's analysis of FELA claims, we have followed federal case law in giving a liberal construction in favor of injured railroad workers so that FELA may accomplish its humanitarian and remedial purposes. *See Haug v. Burlington Northern, Inc.* (1989), 236 Mont. 368, 770 P.2d 517; *Bevacqua v. Burlington Northern, Inc.* (1979), 183 Mont. 237, 598 P.2d 1124; *LaBella v. Burlington Northern, Inc.* (1979), 182 Mont. 202, 595 P.2d 1184. One area of FELA that this Court has liberally construed in order to further the objectives of

FELA is a plaintiff's selection of forum in actions brought under the Act. We have found as "highly persuasive" the policy favoring the injured worker's choice of forum. *See Haug*; *LaBella*.

In summary, we find that § 25-2-122(2), MCA, is unconstitutional because it violates the Equal Protection Clause of the Montana Constitution. There is no rational basis for treating tort victims injured by nonresident corporate tort-feasors differently than tort victims injured by all other nonresident tort-feasors.

In light of our ruling, there is no need to address the retroactivity or special legislation issues.

The above cases are remanded to the District Courts for proceedings consistent with our decision.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
                Justices

Justice Terry N. Trieweiler specially concurring.

I concur with the majority's conclusion that § 25-2-122, MCA, which restricts venue in actions against nonresident corporate defendants, violates the Equal Protection Clause found at Article II, Section 4, of the 1972 Montana Constitution.

I disagree with the majority's conclusion that the appropriate level of scrutiny of § 25-2-122(2), MCA, as it is applied to the parties in this case, is the rational basis test.

In cases brought by railroad workers pursuant to the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60, choice of venue for the injured worker has unique significance, which in the past has been equated with access to the courts guaranteed by Article II, Section 16, of the Montana Constitution. Any erosion of the right, therefore, necessarily implicates a fundamental right and, when done in discriminatory fashion as was done by § 25-2-122(2), MCA, requires our strict scrutiny.

The fundamental nature of an injured railroad worker's right to choose venue is evident from the FELA itself. Section 5 of that Act, codified at 45 U.S.C. § 56, provides that:

> Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, <u>or in which the defendant shall be doing business at the time of commencing such action</u>. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.

(Emphasis added.)

19

In *Akerly v. New York Central Railroad Co.* (6th Cir. 1948), 168 F.2d 812, the U.S. Court of Appeals for the Sixth Circuit explained that the venue provision in the Federal Employers' Liability Act was more than procedural. That court concluded that it was a substantive part of those rights guaranteed to injured railroad workers pursuant to the FELA.

In *Akerly*, the railroad sought to limit the injured worker's choice of venue as a condition to advancing "living expenses" while he was out of work as a result of a work-related injury. In holding that such a contract provision was void, the Court of Appeals pointed out that the venue provision found at § 56 was first enacted in 1910 because "the general venue provisions worked injustices to employees." *Akerly*, 168 F.2d at 814. That court provided the following explanation of its conclusion that the rights provided for in the FELA venue statute are substantive and not merely procedural:

> Section 6 creates new and important rights in the employee and it created corresponding liabilities against the employer. . . . In fact this new venue statute creates, within the ordinary meaning of the word, liability against the employer in states and districts, where he could not have been sued prior to the amendment. The paragraph is broad and sweeping, and as pointed out in Duncan v. Thompson, 315 U.S. 1. 62 S.Ct. 422, 424, 86 L.Ed. 575, the adoption of the section in its present form "argues persuasively that Congress wanted Section 5 to have the full effect that its comprehensive phraseology implies." As specifically held in the cited case, § 5 is applicable to existing causes of action.
>
> We think that the inclusion of this section in the Employers' Liability Act, with its creation of new obligations against the employer, makes the venue provision an inherent part of the employer's liability. An attempt to limit it by contract is an attempt to exempt the railroad from liability, and is void.

*Akerly*, 168 F.2d at 814-15.

20

The substantial nature of the right provided for by the FELA's venue provision was acknowledged by the U.S. Supreme Court in *Boyd v. Grand Trunk Western Railroad Co.* (1949), 338 U.S. 263.

This Court has, since 1979, acknowledged that any effort to limit a railroad worker's choice of venue in a FELA action beyond those limitations found at § 56 has constitutional implications pursuant to Article II, Section 16. *See LaBella v. Burlington Northern, Inc.* (1979), 182 Mont. 202, 595 P.2d 1184.

In *State ex rel. Burlington Northern Railroad Co. v. District Court* (1995), 270 Mont. 146, 891 P.2d 493, we summarized our holding in *LaBella* as follows:

> We first pointed out that this state's public policy, dictated by Article II, Section 16, of our Constitution, requires that our courts "shall be open to every person, and speedy remedy afforded for every injury to person, property or character." We noted that constitutional right was unrestricted by reference to citizenship or residence and that any such qualification could not pass muster under the Privileges and Immunities Clause of Article IV, Section 2 of the Unites States Constitution. *LaBella*, 595 P.2d at 1187. We then cited § 49-1-204, MCA, which mandates equality of rights and duties for United States citizens who are not citizens of Montana; and we found "highly persuasive" the policy favoring the injured railroad worker's choice of forum.

*State ex rel. BN*, 270 Mont. at 151, 891 P.2d at 497.

In *State ex rel. BN*, we reaffirmed that in the unique case of injured railroad workers, because of the strong national policy favoring choice of venue in which to bring FELA actions, in combination with our constitutional obligation to assure that our courts are open to every person, an injured railroad worker's choice of venue could not be limited by the doctrine of *forum non conveniens*. We held that:

21

The clear requirements of Article II, Section 16 of Montana's Constitution and of § 49-1-204, MCA, and the important policy reasons supporting a liberal construction of the Act in favor of the injured worker and the FELA plaintiff's choice of forum simply cannot be denigrated to a secondary position because of the impact--whether theoretical or real--of the filing of these types of cases on the dockets of local Montana courts. When balanced against the mandates of our Constitution, our statute and the policies underpinning the Act which are adopted and expressed in our own cases spanning three and one-half decades, applying *forum non conveniens* to FELA actions because of docket overcrowding is simply *non sequitur*. That we opened such a door in the first place and then allowed it to remain open for so long, speaks not so much to the merits of the argument, as it does to our simple failure to concede its obvious infirmity.

We again hold, as we clearly did in *LaBella*, that a district court in this state may not dismiss a FELA action because it deems itself to be an inconvenient forum. We again hold, as we clearly did in *Haug* [*v. Burlington Northern* (1989), 236 Mont. 368, 770 P.2d 517], that a district court in this State is not empowered to change the place of trial of a FELA action based on the doctrine of *forum non conveniens*, whether the common law variety or, arguendo, as codified in § 25-2-201, MCA. Moreover, in light of the mandates of Article II, Section 16 of our Constitution, § 49-1-204, MCA, and the policies underpinning the Act which are adopted and expressed in our own cases spanning more than thirty years, we will not, henceforth, reexamine this issue on the basis of the numbers of out-of-state FELA cases filed in Montana's district courts.

*State ex rel. BN*, 270 Mont. at 156, 891 P.2d at 499-500 (emphasis added).

Based on the historical significance of an injured railroad worker's right to choose venue, except as limited by 45 U.S.C. § 56, based on the substantive nature of that right pursuant to federal case law, and based on our own long history of repeated conclusions that any erosion of that right also diminishes the right of access to Montana's courts guaranteed by Article II, Section 16, of the Bill of Rights in Montana's Constitution, I conclude that an injured railroad worker's choice of venue is a fundamental right; that limitation of that right

22

based on statutory classifications requires strict scrutiny and proof of a compelling state interest; and that no compelling state interest, nor any interest of any kind, has been established by the proof in this case for eroding an injured railroad worker's right to choose the venue in which he or she brings a FELA claim.

Therefore, while I concur in the majority's conclusion that § 25-2-122, MCA, violates the Equal Protection Clause of Montana's Constitution, I disagree with the process by which the majority arrived at that conclusion.

It goes without saying that, for the reasons set forth in this opinion, I disagree with the conclusions expressed in the dissent. While the dissent sets forth an interesting academic exercise, it is unfounded in reality and unsupported by the experience of any lawyer who has litigated cases throughout the state of Montana. I am certain that those lawyers would, without exception, believe that choice of venue is the most significant right involved in the litigation of a case.

More important, the significance of an injured railroad worker's choice of venue in litigation against his or her employer is recognized by eighty-seven years of federal legislation and case law, and more than thirty years of this Court's precedent. To argue, as the dissent does, that "the law assumes that anyone or all four of the venues will provide a forum where the laws will be equally administered" ignores not only reality, but the legislative history of 45 U.S.C. § 56, the substance of § 56, and the federal and state case law which has applied § 56. It ignores the fact that some venues are economically impacted by

23

the railroad industries and justifiably perceived as unfavorable locations for the enforcement of injured railroad workers' rights. It ignores the fact that some venues throughout Montana have been historically considered hostile to the rights of employees in general. Finally, it ignores the fact, which should be known to anyone who has reviewed the hundreds of appeals that come to this Court every year, that not all district judges are equal. Some are more knowledgeable than others about the complex and unique features of FELA law. Some are more committed than others to the strict enforcement of the rights guaranteed by that law. All of these factors were taken into consideration by Congress when injured railroad workers were, by statute, given greater flexibility than other litigants to choose the venue most favorable for the prosecution of their claims.

In conclusion, the law does not, and never has assumed that some arbitrary number of limited venue options will afford even-handed administration of justice to injured railroad workers. The dissent's conclusions to the contrary are unfounded in either fact or law.

_____
                    Justice

Justice William E. Hunt, Sr., joins in the foregoing concurring opinion.

_____
                    Justice

Justice W. William Leaphart, dissenting.

I dissent. The Court holds that since a party who is injured by a nonresident person has a choice of fifty-six different venues in the state of Montana, § 25-2-118(2), MCA, a person injured by an out-of-state corporation and whose venue choices are limited to fewer than all fifty-six counties is being denied equal protection of the law. Thus, § 25-2-122(2), MCA, which limits venue in suits against nonresident corporations to four counties is unconstitutional.

Unless there is some evidence that none of the four venues provided for in § 25-2-122(2), MCA, will administer the law in a just and equal manner, we must assume that there is even handed administration of justice throughout the district courts in the state of Montana. Given that assumption, the fact that some other litigant may have the ability to choose between five, ten or fifty-six venues which will also administer the law in a fair and just manner makes no difference.

Cincinnati Street Ry. Co. v. Snell (1904), 193 U.S. 30, 36, 24 S.Ct. 319, 321, 48 L.Ed. 604, 607, involved a statute which allowed a party litigating with a corporation the right to change the venue out of the county in which the corporation kept its principal place of business. The railway company challenged the statute for the reason that it did not afford the corporate party the same right to change venue. The Court characterized the issue as follows:

> That although the protection of equal laws equally administered has been enjoyed, nevertheless there has been a denial of the equal protection of the law within the purview of the 14th Amendment, only because the state has allowed

25

one person to seek one forum and has not allowed another person, asserted to be in the same class, to seek the same forum, although as to both persons the law has afforded a forum in which the same and equal laws are applicable and administered.

In rejecting the proposition that if A only has access to one forum where the law is equally administered, the fact that B has access to more than one forum where the law is equally administered, means that A has been denied equal protection of the laws, the court held:

> But it is fundamental rights which the 14th Amendment safeguards, and not the mere forum which a state may see proper to designate for the enforcement and protection of such rights. Given, therefore, a condition where fundamental rights are equally protected and preserved, it is impossible to say that the rights which are thus protected and preserved have been denied because the state has deemed best to provide for a trial in one forum or another. It is not, under any view, the mere tribunal into which a person is authorized to proceed by a state which determines whether the equal protection of the law has been afforded, but whether in the tribunals which the state has provided equal laws prevail.

> It follows that the mere direction of the state law that a cause, under given circumstances, shall be tried in one forum instead of another, or may be transferred when brought from one forum to another, can have no tendency to violate the guaranty of the equal protection of the laws where in both the forums equality of law governs and equality of administration prevails.

Cincinnati Street Ry. Co., 193 U.S. at 36-37 (emphasis added).

In Bain Peanut Co. v. Pinson (1931), 282 U.S. 499, 51 S.Ct. 228, 75 L.Ed. 482, a corporation filed an equal protection challenge to a venue statute which allowed plaintiffs to sue a private corporation in the county where an action arose. The statute, however, limited suit against unincorporated individuals to the county in which they were domiciled. In upholding the statute, the Court stated:

26

In deciding whether a corporation is denied the equal protection of the laws when its creator establishes a more extensive venue for actions against it than are [sic] fixed for private citizens we have to consider not a geometrical equation between a corporation and a man <u>but whether the difference does injustice to the class generally</u>, even though it bear hard in some particular case, which is not alleged or proved here.

<u>Bain Peanut Co.</u>, 282 U.S. at 501 (emphasis added) (citations omitted).

The Court looked to its decision in <u>Cincinnati Street Ry. Co.</u> for the answer.

The question seems to be answered by Cincinnati Street Ry. Co. v. Snell, [citation omitted] which lays down that <u>if the protection of fundamental rights by equal laws equally administered is enjoyed, the Constitution does not forbid allowing one person to seek a forum from which another in the same class is excluded</u>.

<u>Bain Peanut Co.</u>, 282 U.S. at 501 (emphasis added) .

Likewise, in the present case, we cannot address the equal protection question by merely looking at the geometrical equation (plaintiffs hurt by out-of-state corporations get four venue choices while plaintiffs hurt by out-of-state individuals get fifty-six venue choices) and concluding, *a priori*, there must be a denial of equal protection. Rather, we must determine whether the difference, in fact, "does an injustice."

The United States Supreme Court has held that a person challenging a statute on equal protection grounds must show a "discrimination against them of some substance." American Party of Texas v. White (1974), 415 U.S. 767, 781, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744, 760. " 'Statutes create many classifications which do not deny equal protection; it is only "invidious discrimination" which offends the Constitution.' " <u>American Party of Texas</u>, 415 U.S. at 781 (citing Ferguson v. Skrupa (1963), 372 U.S. 726, 732, 83 S.Ct. 1028, 1032, 10

L.Ed.2d 93, 98). "The prohibition of the Equal Protection Clause goes no further than the invidious discrimination." Williamson v. Lee Optical of Oklahoma (1955), 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573.

Additionally, as the United States Supreme Court recognized in American Motorists Ins. Co. v. Starnes (1976), 425 U.S. 637, 96 S.Ct. 1800, 48 L.Ed.2d 263,

> We are not confined to the language of the statute under challenge in determining whether that statute has any discriminatory effect. Just as a statute nondiscriminatory on its face may be grossly discriminatory in its operation, [citations omitted] so may a statute discriminatory on its face be nondiscriminatory in its operation. There being no discriminatory effect achieved by the aspects of the Texas venue provisions calling for establishment of a cause of action, we have no difficulty in concluding that appellant's equal protection challenge to Exception 27 must be rejected.

American Motorists Ins. Co., 425 U.S. at 645 (emphasis added).

Although § 25-2-122(2), MCA, may appear discriminatory on its face when one contrasts fifty-six venue choices with four venue choices, the real question is not one of numerical discrepancy. Rather, the inquiry is whether that discrepancy creates a substantive, invidious discrimination.

In my view, the venue statute is discriminatory in its operation only if it can be shown that it does an injustice to plaintiffs injured by out-of-state corporations by (1) denying them any choice in selecting venue, or (2) denying such plaintiffs a venue in which they can enjoy equal laws equally administered. Section 25-2-122(2), MCA, does neither. It allows a plaintiff injured by an out-of-state corporation to file suit in any one of four venues: the county where the tort was committed; the county in which the plaintiff resides, the county

28

in which the corporation's resident agent is located, or the first judicial district.

In reaching its conclusion, the Court presents a hypothetical situation where two Montana resident drivers were hurt in separate car accidents both involving out-of-state defendants. Both residents would be able to file tort claims in state court. If one resident were injured by an out-of-state individual, that resident could sue in any county in Montana. However, if the other resident were injured by an employee of an out-of-state corporation, that resident would be restricted to four venue choices. Based upon this analogy, the Court concludes that § 25-2-122(2), MCA, operates unequally on two different classes of people and thus denies equal protection of the laws. The Court's conclusion, however, is based entirely upon the numerical discrepancy. The opinion fails to analyze whether that discrepancy actually creates a substantive discrimination, i.e., whether it works an injustice.

The Court assumes that a plaintiff injured by an out-of-state corporation, will, despite four venue choices, somehow be denied a forum where equal laws will be equally administered. There is no basis for making such an assumption. If a party can demonstrate that there is reason to believe that an impartial trial cannot be had in a venue, or that the convenience of witnesses and the ends of justice would be promoted by a change of venue, then the Court "must" change the place of trial. Section 25-2-201, MCA. Absent such a showing, the law assumes that any one or all four of the venues will provide a forum where the laws will be equally administered.

If, as the Court assumes, a limitation of four venue choices works an injustice on a

29

plaintiff, then what does that say about § 25-2-122(1), MCA, which limits Montana residents who sue Montana corporations to a mere two venue choices: the defendant's residence or the place where the tort occurred?

The Court has fallen prey to a facile argument that if A has more choices than B, B has necessarily been denied equal protection. We should not reach such a conclusion absent a showing that B does not still enjoy equal laws equally administered. If B has four venue choices and can force a change of venue if there is reason to believe an impartial trial cannot be had, then the law is not working an injustice on B and there is no denial of equal protection.

The majority puts much store in the special status of FELA plaintiffs. Indeed, this Court has recognized that FELA plaintiffs have a right of choice in selecting a venue. Haug v. Burlington Northern R. (1989), 236 Mont. 368, 374, 770 P.2d 517, 520. However, we have never stated that FELA plaintiffs have a right to a certain number of venue choices or that the legislature cannot limit the choices to a number less than fifty-six. It cannot be said that § 25-2-122(2), MCA, denies the FELA plaintiff a choice in venue. Rather it gives the plaintiff four choices. The only question is whether the fact that plaintiffs suing noncorporate, nonresident defendants have *more* venue choices, means that the FELA plaintiff is being denied equal protection. I think not. If the FELA plaintiff has four choices and each of the four venue choices is presumed to afford even handed administration of justice, there is no substantive, invidious discrimination. I would hold that § 25-2-122(2),

30

MCA, does not deny the equal protection of the laws.


_____
Justice

Justice Karla M. Gray joins in the foregoing dissent.


_____
Justice